BERES ET AL., APPELLANTS, *v.* HOPE HOMES, INC. ET AL., APPELLEES.

72

(No. 10658—Decided
December 15, 1982.)

Mr. Warren W. Gibson and Mr. Michael J. Moran, for appellants.

Mr. Ronald O. Kaffen and Mr. Lee C. Davies, for appellee Hope Homes, Inc.

Mr. Frederick Lawrence, for appellee city of Tallmadge.

O'NEILL, J. In April 1946, an allotment known as the Hilltop Acres Allotment was recorded with the offices of the Summit County Recorder. The plat contained certain restrictions concerning the lots located within the allotment. Those restrictions, in pertinent part, provided as follows:

"No business, commercial, sales, manufacturing or otherwise shall be conducted upon any lot. The premises shall be used for private residence purposes only, and only single-family residences shall be erected or maintained, and only one residence building upon each lot, except that on lots #4 and #19, one who is the owner of an entire lot, may erect and maintain thereon, one additional single-family residence building if the same be located not less than 300 feet from the nearest highway."

In late 1980 and early 1981, defendant-appellee Hope Homes, Inc. entered into negotiations for the acquisition of a property owned by Mr. and Mrs. Fred Bochert, known as Lot #51 of the Hilltop Allotment, which has a mailing address of 102 North Alling Road, Tallmadge, Ohio.

The express purpose for the acquisition of this house was the installation of a residential care facility. The facility was intended to house six adult women with developmental disabilities ranging from moderate to severe mental retardation.

Prior to culmination of the negotiations, the officials responsible for the acquisition of this house had actual knowledge of the existence of the plat restrictions associated with this allotment. This is in addition to the constructive knowledge created through the recordation of the plat.

The home must comply with the licensure requirements of the state of Ohio. In order to so comply as a "family home," it is necessary that the facility provide room and board, personal care, habilitation services and supervision in a family setting for not more than eight persons with developmental disabilities. It is further necessary that the operator of such a facility maintain records of the medical treatment accorded the residents, record unusual occurrences such as accidents, injuries and seizures, keep a daily census of admissions, discharges and other releases and record the progress made on a ninety-day basis of the residents' individual habilitation plans. In order for this house to comply with the ordinances of the city of Tallmadge and with the licensure requirements with the state of Ohio, substantial changes in the heating, plumbing and electrical equipment will be necessary.

Hope Homes, Inc. will receive reimbursement for its expenses incurred in the care and treatment of the individuals occupying this facility. This reimbursement will include expenditures for the maintenance of the property, food for the residents and depreciation of the physical structure. It will also include salaries of the staff which are currently contemplated to include a regular manager and a weekend manager.

Under the ordinances of the city of Tallmadge, the property is located within an R-3 residential district. The permissible uses in such a district are single-family residential dwellings and accessory uses provided such uses are incidental to

the principal use and do not include any activity conducted as a business. In addition, there are certain conditional permissible uses. These include institutions for medical care and rooming, lodging and boarding houses.

In February 1981, Hope Homes, Inc. applied to the city of Tallmadge for a conditional zoning certificate. This permit was granted by the city of Tallmadge on April 9, 1981. From that adverse decision, plaintiffs-appellants filed an appeal to the Court of Common Pleas of Summit County. The appellants at that time also sought a declaratory judgment determining that the proposed facility would be violative of. the plat restrictions.

This matter was heard by the trial court. At that time, plaintiffs sought to introduce evidence pertaining to the meaning of a family. The trial court sustained objections to the admissibility of this evidence. At trial, each of the plaintiffs further testified that part of the consideration which they understood they were receiving from the acquisition of lots within the allotment was the ability to maintain their neighborhood as a single-family, private residential area without the incursion of other types of uses. All further testified that the value of their properties would be reduced as a result of the operation of this facility within their allotment.

On April 7, 1982, the trial court issued its decision determining the validity of the issuance of the conditional zoning certificate and further determining that the proposed use of the premises located at 102 North Alling Road, Tallmadge, Ohio, by defendant Hope Homes, Inc. was a proper use of said premises and not in violation of any deed or allotment restrictions that cover the premises. From that adverse decision, the plaintiffs appealed to this court.

Appellants, in their first assignment of error, argue that the trial court erred in determining that the proposed use of the premises by Hope Homes, Inc. did not violate the plat restrictions of Hilltop Acres Allotment.

In his opinion the trial judge interpreted and defined that portion of the deed restriction which reads, "[t]he premises shall be used for private residence purposes only * * *." The trial judge separately defined the words *"private"* and *"residence."* The court concluded that a residence use is a use where human beings make their permanent homes. The trial judge further defined *"private"* as a use "[i]ntended for or restricted to the use of a particular person, group, or class." Appellants contend that the court should not have indulged these separate definitions arguing that the Supreme Court has defined "private residence." In support of this contention, appellants refer to a portion of the *dicta* in the case of *Hunt* v. *Held* (1914), 90 Ohio St. 280, at page 283, which states as follows:

"But is there any doubt as to the meaning of the words? The word 'residence,' as we view it, is equivalent to 'residential' and was used in contradistinction to 'business.' If a building is used as a place of abode and no business carried on it would be used for residence purposes only whether occupied by one family or a number of families. Counsel say that the words were intended to describe a type of building. We think not. The word 'residence' has reference to the use or mode of occupancy to which the building may be put. If it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as 'a single residence,' 'a private residence,' 'a single dwelling house.' And it is to be noted that the common grantor here, in his deed to another lot owner in the subdivision, used the expression: 'This property is sold for single residence purposes only.' "

This *dicta* could be dispositive but for the facts in this case. The inhabitants of the home in this case shall number six adult women with developmental disabili-

ties. They shall live together as a unit. As a unit, they shall maintain the home, prepare meals and perform the various housekeeping chores. All of their housekeeping functions are performed under the guidance of a house parent who resides in the home. In spite of the fact that the relationship is not one of consanguinity, the residents are a single family unit. In *Carroll* v. *Miami Beach* (Fla. App. 1967), 198 So. 2d 643, it was held that a group of young religious novices with a mother superior as their family head could properly live as a single family unit.

"Under the terms of the ordinance any number of persons *occupying the premises and living as a single housekeeping unit* are entitled to the status of a family. There is no requirement that they be related by consanguinity or affinity." *Id.* at 644.

The same reasoning can be drawn from the case of *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167], wherein the Ohio Supreme Court recognized that a single housekeeping unit, a family, could be composed of "a group of individuals who had joined together in these premises in order to primarily share the rooming, dining and other facilities. The emphasis in such an instance may be placed upon the dwelling aspect of the unit, and upon the fact that those who are living within that structure are sharing and maintaining a household as a single unit." *Id.* at 268. The United States Supreme Court has concluded that a "single family unit" can exist in the absence of consanguinity.

"In our view, any resolution seeking to define this term narrowly would unconstitutionally intrude upon an individual's right to choose the family living arrangement best suited to him and his loved ones. *Moore* v. *East Cleveland* (1977), 431 U.S. 494, 499." *Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259, 263 [20 O.O.3d 244].

As long as the structure in question is maintained, physically, as a private residence and, as long as it is used and occupied by a group of persons living together as a single household unit, it, by existence and use, is not in violation of restrictions running with the land upon which it is located. It follows that as long as the use is devoted to a family household unit, such use is "private." It follows from the elements thereof that a household unit is in and of itself private as opposed to a multi-family use or an out and out commercial enterprise. Appellants argue that in spite of the family setting, the operators of this home must provide annual accounting statements, provide reports, and provide supervisors and care paid by the state and federal government. This is all true, but it is collateral to the family housekeeping unit. It does not make that unit non-private any more than the resident, engaged in business, who does his bookkeeping at home.

The restrictions on the lot in question were recorded in the year 1946. The plaintiffs called Donald Ramsey as a witness. Ramsey testified that in 1946 he was nineteen years old. He was asked the following question:

"Q. Can you recall back to the time that you were 19 years old as to your concept of a family?"

There was an objection and it was sustained. The sustention of this objection is the basis for appellants' second assignment of error. Ramsey was asked for *his* concept of a family and not the community concept or the concept of the drawer of the restriction or the concept held by parties to the restriction. In the determination of intent, 4 Williston on Contracts (3 Ed. 1961), Section 617, at 679-681, states that the inquiry of the court should be: What was the meaning of the writing at the time and place it was made between persons of the kind or class who were parties to it? The court properly excluded Ramsey's opinion.

The home in question is located in an area which has been classified by the

council of the city of Tallmadge as an "R-3 Residential District." Permitted uses in such a district are single-family residential dwellings, accessory non-business uses and signs. The ordinance also permits conditional permissible uses as follows:

"Sec. 412-3 Conditionally Permissible Uses

"The Planning Commission may issue conditional Zoning certificates for uses listed herein subject to the general regulations of Article VIII and to the specific requirements of Article VIII referred to below.

"a. Public and parochial schools subject to Subsections 102, 103, 105, 107, 108, 115.

"b. Churches and other buildings for the purpose of religious worship subject to Subsections 102, 105, 109, 115, 118, 121.

"c. Public utilities right-of-ways and pertinent structures subject to Sections 102, 114, 115.

"d. Governmentally owned and/or operated parks, playgounds and golf courses (except miniature) subject to Subsections 102, 103, 105, 106, 107, 121.

"e. Temporary buildings and uses for purposes incidental to construction work subject to Subsections 111, 112.

"f. Institutions for medical care — hospitals, clinics, sanitariums, convalescent homes, nursing homes, homes for the aged and philanthropic institutions subject to Subsections 102, 103, 105, 107, 109, 113, 115, 121." City of Tallmadge Ordinance 9-1969.

Appellants argue that the use of the property involved is not a "conditional use" and that the trial court erred in holding that the permit issued was valid.

At the outset, let us say that the intended use is a permitted use as a single-family residential dwelling. Section 201-32 of Ordinance 9-1969 defines a "family" as:

"* * * one or more persons occupying a premises and living as a single housekeeping unit, whether or not related to each other by birth or marriage, as distinguished from a group occupying a boarding house, lodging house, or hotel, as herein defined."

In the instant case we have a single housekeeping unit residing in a one-family dwelling.

Appellants argue that since the use of this home is not specified as a conditional use, council had no authority to grant a permit. In support, the appellants make a very correct statement of the law: "Where a zoning ordinance limits the authority of the body to vary or modify the applications of the provisions of a zoning ordinance, actions authorizing greater variance or modification are illegal and contrary to law. *Zurow* v. *City of Cleveland* [1978], 61 Ohio App. 2d 14 [15 O.O.3d 21]." The use of this home was not a greater variance or modification than all of those specified in the zoning ordinance (Section 412-3).

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BELL, P.J., and DONOFRIO, J., concur.

O'NEILL and DONOFRIO, JJ., of the Seventh Appellate District, sitting by assignment in the Ninth Appellate District.