[No. C000212. Third Dist. Sept. 24, 1987.]

JEROME K. BARRETT et al., Plaintiffs and Appellants, v. RALPH LIPSCOMB et al., Defendants and Respondents; JUNE ABTS, Real Party in Interest and Respondent; J. EDWARD GREENLEE, Intervener and Appellant.

COUNSEL

Barr, Newlan & Sinclair, Steven P. Hale and Lauren E. Leisz for Plaintiffs and Appellants and for Intervener and Appellant.

Brislain, Zink & Lenzi and Albert J. Lenzi, Jr., for Defendants and Respondents and for Real Party in Interest and Respondent.

OPINION

CARR, J.—In this appeal we consider whether a restrictive covenant initially recorded in 1964 and which limits the use of each lot in a subdivision to one single family dwelling has continued viability after the enactment in 1978 of Health and Safety Code section 1566.5.[1] The order at issue in this appeal is one modifying a permanent injunction to allow defendants Ralph and Bessie Lipscomb (the Lipscombs) and Real Party in Interest Dr. June Abts (Dr. Abts) to operate a small commercial residential care facility on

---

[1] Section 1566.5 provides: "For the purposes of any contract, deed, or covenant for the transfer of real property executed on or after January 1, 1979, a residential facility which serves six or fewer persons shall be considered a residential use of property and a use of property by a single family, notwithstanding any disclaimers to the contrary."

All statutory references are to the Health and Safety Code unless otherwise specified.

real property subject to a restrictive covenant limiting use of the property to "private residences."

Plaintiffs Jerome Barrett and other property owners in the same subdivision together with intervener contend (1) the court erred in applying section 1566.5 retroactively and (2) the restrictive covenant does not violate constitutional proscriptions against age discrimination or the right of privacy. These contentions have merit. We shall reverse the order modifying the injunction.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1964, the owners of Ramada Acres Subdivision in Chico, California, recorded a subdivision map for the property along with a "Declaration of Protective Covenants and Restrictions on Use and Occupancy of Ramada Acres Subdivision, Unit No. Two" (the restrictive covenants). Among the restrictive covenants was one limiting the use of each lot to one single family dwelling. This restriction provided: "No use whatsoever, except in its use and improvement, as the site and grounds of a private residence, shall be made of any lot or plot therein. The term 'Private Residence' is intended to exclude every form of multi-family dwelling, boarding or lodging house, sanitarium, hospital, rest home, and the like; guest house, or servant quarters. No buildings or structures placed or erected on any of said lots shall be used or occupied as a public inn or restaurant or for any manufacturing, industrial, commercial, or public amusement purpose whatsoever, or any unlawful purpose." Another of the restrictive covenants prohibited alterations to any building without the prior submission of plans and specifications to the subdivision's architectural control committee.

In February 1965, the owners of Ramada Acres conveyed lot 50 to Lewis and Lillie McGuire. The deed expressly referred and subjected title of the property to the recorded covenants and restrictions. In 1977, the McGuires conveyed the lot to the Lipscombs, but the deed made no reference to the covenants.

The Lipscombs thereafter converted their house and garage on lot 50 into separate housing units, intending to open a small residential care facility for six or fewer elderly persons.

In November 1977, Greenlee,[2] one of the original owners of the subdivision who served as a delegate of the architectural control committee, notified the Lipscombs they were in violation of the restrictive covenants.

---

[2] Greenlee also resides in Ramada Acres.

Shortly thereafter, plaintiffs filed a complaint for a temporary restraining order and preliminary and permanent injunction against the Lipscombs. The Lipscombs failed to answer the complaint and in February 1978, a default judgment granting a permanent injunction was entered against them.[3] The injunction enjoined the Lipscombs from "using, occupying or maintaining their real property . . . (a) for any purpose other than as a private residence as described in the said Protective Covenants and Restrictions on Use; [¶] (b) as a multi-family dwelling, boarding house, lodging house, sanitarium, rest home, guest house, and the like; [¶] (c) for any commercial purpose whatsoever; [¶] (d) for more than one dwelling on the lot; [¶] (e) erecting, placing or altering any building on the lot without first submitting construction plans and specifications to the architectural control committee as described in . . . [the] Protective Covenants and Restrictions on Use . . . ."

Seven years later, in January 1985, real party in interest, Dr. Abts leased lot 50 from the Lipscombs and began to operate a residential care facility in direct violation of the injunction. In February 1985, Dr. Abts filed an order to show cause requesting a modification of the injunction. The request was based on the enactment of section 1566.5, effective January 1, 1979, which provided a residential care facility serving six or fewer persons is not inconsistent with "residential use."

Plaintiffs filed opposition to the motion; Greenlee intervened in the action as he feared he would be liable as the original covenantor if the restrictive covenants were not enforced.

Relying on section 1566.5 and *Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398 [181 Cal.Rptr. 703], a case in which section 1566.5 was applied retroactively, the trial court modified the permanent injunction to permit the operation of a residential care facility for six or fewer elderly persons. This appeal ensued.

## I

Plaintiffs and Greenlee contend the court abused its discretion in modifying the permanent injunction in that section 1566.5 does not apply as the restrictive covenants were recorded prior to the effective date of the statute and are expressly excluded from coverage. They urge the trial court's reliance on the section is an unlawful retroactive application of the statute.[4]

---

[3]The Lipscombs apparently also stipulated to the imposition of the permanent injunction provided no costs or attorney fees were assessed against them.

[4]Plaintiffs also urge trial court error for reliance on *Welsch* v. *Goswick, supra,* to reach retroactive application of the statute. We submit the trial court had no alternative in view of

Section 1566.5 is a part of the California Community Care Facilities Act (§ 1500 et seq.) which was enacted in 1973 as the legislative response to what was perceived as an urgent need to provide nonmedical community care and services in residential and nonresidential facilities for both children and adults as an alternative to state hospital or other institutional care (§§ 1501, 1502).

Article 7 entitled "Local Regulation" and encompassing sections 1566 through 1566.7, was added to the act in 1978 to statutorily implement "the policy of this state that each county and city shall permit and encourage the development of sufficient numbers and types of residential care facilities as are commensurate with local need." (§ 1566.) In furtherance of this public policy, section 1566.3 provided: "[A] residential facility which serves six or fewer persons shall be considered a residential use of the property" and "the residents and operators of such a facility shall be considered a family for the purposes of any law or zoning ordinance which relates to the residential use of property." The six or fewer persons did not include the licensee or operator of the facility, family members or staff. (§ 1566.) Section 1566.3 also provided "For the purpose of all local ordinances, a residential facility which serves six or fewer persons shall not be included within the definition of a boarding house, rooming house, institution or home for the care of minors, the aged, or the mentally infirm, foster care home, guest home, rest home, sanitarium, mental hygiene home, or other similar term which implies that the residential facility is a business run for profit or differs in any other way from a single family residence." Further, no "conditional use permit, zoning variance, or other zoning clearance shall be required of a residential facility which serves six or fewer persons which is not required of a single family residence in the same zone." (*Ibid.*)

The clear import of article 7 (§§ 1566-1566.7) was to prohibit local governmental entities from barring such facilities from single family residential neighborhoods by requiring use permits. Law existing prior to enactment of article 7 required that such facilities serving six or fewer persons on a 24-hour-a-day basis be considered single family residential but did not prohibit a county or city from requiring a conditional use permit to maintain such a facility. Article 7 deleted this authority of counties and cities to require a special use permit for such facilities or to impose zoning conditions more restrictive than those imposed on single family dwellings in the same zone. (See Legis. Counsel's Dig., Sen. Bill No. 2093, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 234.) The need for restricting local regulation resulted from overconcentration of residential care facilities in areas of cities

*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

and counties where operators of such facilities found it easier to obtain the necessary zoning and permits from the local authorities.[5]

Private agreements for the transfer of real property are treated in section 1566.5, which states it is applicable only to agreements, deeds or covenants executed after January 1, 1979.

■ It is a fundamental rule of statutory construction that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) In determining such intent the court looks first to the words of the statute. (*Ibid.*) When the legislative intent is so apparent from the face of the statute that there can be no question as to its meaning, there is no need for construction and courts should not indulge in it. (See *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

The language of section 1566.5 is so clear and unambiguous that there is no room for interpretation: "For the purposes of any contract, deed, or covenant for the transfer of real property executed on or after January 1, 1979, a residential facility which serves six or fewer persons shall be considered a residential use of property . . . notwithstanding any disclaimers to the contrary."

*Welsch* v. *Goswick, supra,* 130 Cal.App.3d 398, reached an opposite conclusion from that expressed in this opinion. In our view, the *Welsch* court impermissibly rewrote the statute at issue by deleting the words "executed on or after January 1, 1979."[6]

---

[5]Section 1520.5 states "it to be the policy of the state to prevent overconcentrations of residential care facilities which impair the integrity of residential neighborhoods" and mandates the Director of Social Services to deny a license for a new residential care facility if the director determines overconcentration would result from the granting. A city or county may request denial on the basis of overconcentration.

[6]The Lipscombs and Dr. Abts also cite *McCaffrey* v. *Preston* (1984) 154 Cal.App.3d 422 [201 Cal.Rptr. 252] for the proposition that section 1566.5 authorizes the operation of small residential care facilities even when restrictive covenants imposed prior to 1979 limit property use to "residential use only." *McCaffrey* is inapposite. In that case, the neighbors of a residential facility sought an injunction enjoining defendants' operation of the home based upon a restrictive covenant imposed prior to 1979 which stated: " 'This property shall be used for single family residential purposes only . . . . [A] breach of any of the foregoing conditions and restrictions shall cause the premises to revert to grantors, their heirs or assigns, each of whom respectively shall have the right of immediate entry upon the premises . . . .' " (*Id.,* at p. 428.) The trial court refused to grant the injunction, holding the covenant was personal

In *Welsch, supra,* the operators of a residential care facility in a subdivision subject to restrictive covenants limiting use of property to "single family residential purposes only" ignored an injunction previously entered pursuant to stipulation and commenced operation of a residential care facility for six elderly women. They then filed suit to have the injunction declared invalid under section 1566.5. The restrictive covenants in *Welsch* predated the enactment of section 1566.5 and the trial court denied the requested relief and found plaintiffs were violating the injunction. The appellate court reversed and directed the trial court to modify the injunction, holding the restrictive covenants could no longer be interpreted to preclude the operation of a licensed residential care facility for six or fewer residents. The court stated: "We recognize that the statutes do not attempt to reach covenants entered into before 1979. Nevertheless, article 7 constitutes a strong statement of public policy in favor of a broad interpretation of single family residential use in this area. [Citation]." (*Welsch* v. *Goswick, supra,* 130 Cal.App.3d at pp. 406-407.)

■ We reject as unpersuasive the *Welsch* court's holding that the strong statement of public policy of integrating residential care facilities into single family residential areas justifies overriding the clear legislative intent that as to private agreements relating to property use the statute is prospective only in application.[7] As noted, the statement of public policy in section 1566 et seq. relates to prohibiting counties and cities from barring residential care facilities through the use of zoning and conditional permits. Nowhere in the statutes is there evidence of any legislative intent that a residential care facility be defined as a single family residence for purposes of private agreements, deeds or covenants for the transfer of real property executed prior to January 1, 1979. The intent is expressly stated to be contrariwise. Only agreements, deeds or covenants executed on or after January 1, 1979, are affected. To construe the statute otherwise is to engraft on it a retroactive effect inapplicable on the face of the statute.

■ As stated by this court in *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 500 [209 Cal.Rptr. 771]: "It is a well established canon of

---

and enforceable only through the original grantor's reversionary interest, which had since been extinguished by a quitclaim deed executed by the grantor relinquishing his rights to defendants. The appellate court affirmed the trial court's judgment.

In the present case, the restrictive covenants are not limited to reversionary interests and are therefore enforceable by plaintiffs and Greenlee. Moreover, we do not read *McCaffrey* to state section 1566.5 may be applied retroactively. Rather, the court upheld the constitutionality of the statute against a challenge by plaintiffs that it violated the equal protection and due process clauses. To the extent any dicta in the case may be construed to imply the section may be applied retroactively, we disagree with such holding.

[7] We also disagree with the *Welsch* court's decision condoning self-help by allowing plaintiffs in that case to ignore the injunction.

statutory construction 'that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' [Citation.] 'The rule to be applied is the same with respect to *all* statutes, and none of them is retroactive unless the Legislature has expressly so declared.' [Citation.]"

The concurring opinion in *Welsch* v. *Goswick, supra,* recognized that section 1566.5 "makes the law expressly prospective to private covenants executed 'on or after January 1, 1979' [and] therefore [does] not void the covenant" (130 Cal.App.3d at p. 409) because "legislation may not reach backwards in time to impair private obligations of contract." (*Id.,* at p. 411.) However, the concurring opinion agreed with the majority result on the basis that the restrictive covenant at issue was an impermissible violation of the constitutional privacy right of the residential care facility operators to choose their living companions and pursue their chosen lifestyle. That issue has also been raised in this appeal and is treated in section II of this opinion, *infra*.

 Construing section 1566.5 to be prospective only in application, as it is plainly meant to be, further avoids the constitutional challenge of impairment of vested contractual rights (U.S. Const., art. I, § 10; Cal. Const., art I, § 9) an issue not considered by the *Welsch* court but considered and determined by the court in *Seaton* v. *Clifford* (1972) 24 Cal.App.3d 46, 52 [100 Cal.Rptr. 779]. At issue in the *Seaton* case were provisions of the Welfare and Institutions Code relating to mentally retarded or mentally disordered and other handicapped persons. Section 5115 of that code declares it to be the policy of this state that such persons are entitled to live in normal residential surroundings. To effectuate that purpose, Welfare and Institutions Code section 5116 provided that homes "serving six or fewer mentally disordered or otherwise handicapped persons or dependent and neglected children, shall be considered a residential use of property for the purposes of zoning . . ." and "[s]uch homes shall be a permitted use in all residential zones, including, . . . residential zones for single-family dwellings." On a challenge by defendant residential care facility operators that restrictive covenants in deeds to all homes in the tract limiting use to single family dwelling was unenforceable as against public policy and statutory law, the court held this was in effect a change of zoning and "a change in the zoning restrictions in an area does not impair the enforceability of existing deed restrictions." (24 Cal.App.3d at p. 52.) Further, while the statutes in question "may operate as a shield to the operator of such a facility as against the attempted enforcement of its zoning regulations by a municipality, such an artificial and arbitrary attempt by the state

at a redefinition of terms cannot impair private contractual and property rights."[8] (*Ibid.*)

The statute in this case is analogous to that at issue in the *Seaton* case with the exception that there was no prospective application to private agreements built into the *Seaton* statute. We express no view as to the validity of the redefinition of "single-family residential use" and "family" insofar as agreements executed after January 1, 1979, are concerned. That issue is not tendered by this litigation. We determine only that section 1566.5 has no retroactive application and is not applicable to agreements, contracts or deeds executed before January 1, 1979.

## II

Finally, the Lipscombs and Dr. Abts assert the restrictive covenants cannot be enforced against a residential care facility for the elderly as such enforcement constitutes an impermissible age discrimination within the meaning of the Unruh Civil Rights Act, Civil Code section 51 et seq. and is violative of the constitutional right of privacy of both the owners-operators of the residential care facility and the elderly resident/patient/tenants of such facilities.

We treat each issue separately.

### A. *Age Discrimination*

Under the Unruh Civil Rights Act, discrimination by business establishments based on race, color, religion, ancestry, or national origin is prohibited. (Civ. Code, §§ 51, 53.) In *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427], a divided California Supreme Court held that covenants, conditions and restrictions of a condominium development which restricted residency to persons over the age of 18 years was violative of the Unruh Civil Rights Act and unenforceable.[9]

---

[8] The *Welsch* court looked at *Seaton* v. *Clifford, supra,* in passing but dismissed it as "a 10-year-old case . . . of limited persuasive value." (130 Cal.App.3d at p. 407, fn. 7.)

[9] Plaintiffs and Greenlee contend they are unaffected by the proscriptions against discrimination delineated in the Unruh Civil Rights Act as they do not constitute a "business establishment" within the meaning of the act. In *O'Connor* v. *Village Green Owners Assn., supra,* the critical issue was whether the condominium owners' association was a "business establishment" within the meaning of the Unruh Act. The *O'Connor* court found the association was a business establishment within the meaning of the act. Since we find no discrimination here, we do not address this issue. But see also *Park Redlands Covenant Control Committee* v. *Simon* (1986) 181 Cal.App.3d 87 [226 Cal.Rptr. 199] and *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 468-469 [20 Cal.Rptr. 609, 370 P.2d 313].

 In the present case, the thrust of the restrictions is to prohibit *commercial* use of the subdivision, not to prohibit the elderly from residing in Ramada Acres. There is no language in the covenants to suggest that any age group is barred from residency. The clear intent of the restrictions in question is to prohibit multiple family dwellings and nonresidential use. In maintaining the validity of such restrictions as to agreements or deeds executed prior to January 1, 1979, the reasonable expectations of the other homeowners that the residential character of the neighborhood will be preserved are satisfied. (See *Seaton* v. *Clifford, supra,* 24 Cal.App.3d 46.) For persons acquiring residential property by instruments executed subsequent to January 1, 1979, there can be no such expectation.

### B. *Right of Privacy*

In *Welsch* v. *Goswick, supra,* the concurring opinion based concurrence in the result on "a broader and more compatible legal premise . . . that the stipulated judgment was invalid when it was made," because it violated the privacy rights of the residential care facility operators. (130 Cal.App.3d at p. 409.) Reliance for this conclusion was based on *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219], in which a divided California Supreme Court found invalid as violative of the California constitutional right of privacy (Cal. Const., art. I, § 1), a city ordinance requiring that all occupants of houses in certain zones be members of a family. Family was defined as two or more persons related by blood, marriage or adoption living together as a single housekeeping unit or a group not to exceed five persons, excluding servants living together as a single housekeeping unit. Twelve unrelated persons were living together as a group in a 24-room, 10-bedroom, 6-bathroom house owned by Adamson. They had chosen to live together after Adamson looked for congenial people to share her home. They became a close group with social, economic and psychological commitments to each other, sharing expenses, rotating chores, having evening meals together and enjoying recreational pursuits together. They considered themselves a family and were characterized as an "alternate family" in the majority opinion, which held the rule-of-five ordinance was in violation of article I, section 1 of the California Constitution, which provides: "All people . . . have inalienable rights. Among these are enjoying . . . life and liberty, . . . possessing, . . . property, and pursuing and obtaining . . . happiness, and privacy." The *Welsch* concurring opinion found the residential care facility operators' use of the residence at issue "analogous to that in *Adamson.*"

We find the analogy unpersuasive and unrealistic. Several or more persons coming together in common living quarters to share expenses and household chores in a family atmosphere is a far cry from a commercial

venture in which persons are brought together not by social or compatibility bonds but as paying tenants for food, lodging and care, and whose only common bond is the need for that food, lodging and care.

In *City of Santa Barbara* v. *Adamson, supra,* the Supreme Court invalidated the ordinance at issue because the distinction drawn between related and unrelated persons violated the right of privacy of the "alternate family" members. No compelling state interest for such intrusion into the life style of unrelated persons of a single household was demonstrated by the city. As the court stated: " '[R]esidential character' can be and is preserved by restrictions on transient and institutional uses . . . . Population density can be regulated by reference to floor space and facilities. Noise and morality can be dealt with by enforcement of police power ordinances and criminal statutes. Traffic and parking can be handled by limitations on the number of cars (applied evenly to all households) and by off-street parking requirements. *In general, zoning ordinances are much less suspect when they focus on the use than when they command inquiry into who are the users.*" (27 Cal.3d at p. 133; original italics.)

In the case at issue, the covenants do not limit the number of persons who may inhabit a residence, nor do they attempt to define the type of family units or individuals who may occupy a house within the subdivision. Only a commercial use is barred. In our view, there is no constitutional violation.[10]

### DISPOSITION

The order modifying the injunction is reversed and the cause remanded to the trial court with directions to reinstate the original injunction.

Puglia, P. J., and Deegan, J.,* concurred.

The petition of all respondents for review by the Supreme Court was denied December 23, 1987.

---

[10] Finding no violation of constitutional rights, we do not address whether state action is involved.

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.