[No. 9546–1–III.   Division Three.   November 28, 1989.]

W.E. HAGEMANN, ET AL, *Respondents*, v. URIAH WORTH,
ET AL, *Appellants*.

*James R. Doran,* for appellants.

*John L. Reeder,* for respondents.

MUNSON, J.—In July 1986, eight of the property owners (hereinafter Hagemanns) at the Alta Lake Golf Course brought this action to enjoin Uriah and Lola Worth from providing care to the elderly in their home, alleging violation of a covenant restricting business within the plat.[1] The court found the Worths' use of their home constituted a business, was in violation of the covenant, and therefore issued Hagemanns a permanent injunction against the business use.

The Worths appeal contending the court erred in granting the injunction or, alternatively, the injunction should extend only to the use of their home as a boarding home but not as a foster home. We affirm.

In April 1974, Vaughn and Marlene Wolfe platted an area of land in Okanogan County, known as the Alta Lake Golf Course, into 39 lots plus a golf course. The declaration stated the plat was designed to be an area for "residential and recreational use". The restrictive covenants contained in the declaration were intended to "preserve and enhance the values and amenities of the area." The declaration

---

[1]Inter West Savings Bank, the holder of a security interest in the Worths' property, was also made a party to the action, but did not appear.

restricted buildings to "single–family residences" and pro-
hibited "business, industry or commercial enterprise of any
kind or nature . . .".

In the fall of 1982, the Worths purchased the most
southerly Alta Lake lot for the purpose of erecting a family
home. Thereafter they decided to build a home which could
also be used as a residence for the elderly. The octagon
house plans included a loft, five bedrooms, and three bath-
rooms on the main floor and six bedrooms, three bath-
rooms, a dining room/kitchen and family room on the lower
story. The Worths moved into their home in 1984. In April
1985, Mrs. Worth, an L.P.N., quit her job to care for the
first of the Worths' elderly residents. Each resident paid
the Worths between $900 and $1,250 per month for room,
board and personal care, depending on the level of care
required. No state funding was received for this care. The
same year, the Worths applied for and obtained an adult
family home care license from the State of Washington. As
the number of residents increased, the Worths applied for a
boarding home license.[2] In order to keep the elderly in
their home, the Worths spent $25,000 remodeling it to meet
the State's fire protection standards.

First, the Worths contend a prerequisite for an injunc-
tion to issue is a finding that the Hagemanns suffered sub-
stantial injury. There being no such finding and no
evidence to support such a finding, the court erred. We dis-
agree.

To establish the right to a temporary or permanent
injunction, the party seeking relief must show

> (1) that he has a clear legal or equitable right, (2) that he has
> a well–grounded fear of immediate invasion of that right,
> and (3) that the acts complained of are either resulting in or
> will result in actual and substantial injury to him.

---

[2]The family home license permitted the care of four persons; a new chapter,
added to RCW Title 70, permits as many as six persons if the home is designed to
accommodate that number. Laws of 1989, ch. 427, § 16, effective May 14, 1989.
The boarding home license allows up to nine persons. The boarding home license
supersedes the family home care license and was the license in effect at the time
of trial.

*Washington Fed'n of State Employees, Coun. 28 v. State,*
99 Wn.2d 878, 888, 665 P.2d 1337 (1983) (quoting *Port of
Seattle v. International Longshoremen's & Warehouse-
men's Union,* 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)).
Because injunctions are addressed to the equitable power of
the court, the court must balance these criteria "in light of
equity including balancing the relative interests of the par-
ties and, if appropriate, the interests of the public." *Tyler
Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 792,
638 P.2d 1213 (1982). All three criteria must be satisfied;
generally, the failure to establish any one or more of the
criteria dictates denial of the requested relief. *Federal Way
Family Physicians, Inc. v. Tacoma Stands Up For Life,*
106 Wn.2d 261, 265, 721 P.2d 946 (1986).

■■ In Washington, owners of land have an equitable
right to enforce covenants by means of a general building
scheme designed to make it more attractive for residential
purposes, without showing substantial damage from the
violation. *Mt. Baker Park Club, Inc. v. Colcock,* 45 Wn.2d
467, 471, 275 P.2d 733 (1954); *Johnson v. Mt. Baker Park
Presbyterian Church,* 113 Wash. 458, 472, 194 P. 536
(1920), *cited with approval in Reading v. Keller,* 67 Wn.2d
86, 89–90, 406 P.2d 634 (1965). *See* 20 Am. Jur. 2d *Coven-
ants, Conditions, and Restrictions* § 314, at 879 (1965).
*Accord, Wier v. Isenberg,* 95 Ill. App. 3d 839, 420 N.E.2d
790, 793 (1981); *Crimmins v. Simonds,* 636 P.2d 478, 480
(Utah 1981). The primary objective in construing a restric-
tive covenant is to determine the intent of the parties to
the agreement. *Burton v. Douglas Cy.,* 65 Wn.2d 619, 621–
22, 399 P.2d 68 (1965); *Sandy Point Imp. Co. v. Huber,* 26
Wn. App. 317, 320, 613 P.2d 160 (1980).

The plat for the Alta Lake Golf Course states the area
was designed to be residential and recreational in nature
and the purpose of the protective covenants was to preserve
and enhance its value and amenities. One of the property
owners testified this action was brought to prevent other
businesses from being established within the plat. The

enforcement of this covenant does nothing more than preserve to the homeowners the residential character of the neighborhood. *See Seaton v. Clifford,* 24 Cal. App. 3d 46, 100 Cal. Rptr. 779, 782 (1972); *Barrett v. Lipscomb,* 194 Cal. App. 3d 1524, 240 Cal. Rptr. 336, 342 (1987); *Crimmins v. Simonds, supra* at 480. The Worths' business of caring for the elderly is not objectionable in itself, but to permit their business in contravention of the covenant would open the door to other businesses. By so doing, the residential character of the neighborhood could change. No finding of substantial damage to the Hagemanns is required in this case. We find no error.

■■ Nevertheless, the Worths contend the covenant should not be enforced when other covenants in the plat have been disregarded by the homeowners of Alta Lake. It is correct that when a covenant, which applies to an entire tract, has been habitually and substantially violated so as to create an impression that it has been abandoned, equity will not enforce the covenant. *White v. Wilhelm,* 34 Wn. App. 763, 769, 665 P.2d 407, *review denied,* 100 Wn.2d 1025 (1983); *Reading v. Keller, supra* at 90 (citing *Mt. Baker Park Club, Inc. v. Colcock, supra* at 471). The court found here:

> There is no evidence before the Court that any of the plaintiffs waived compliance with the provisions of the Declaration as to these defendants, nor as to any other persons or activities within the purview of the Declaration.

Finding of fact 11. The Worths failed to assign error to this finding and thus it is a verity on appeal. *Persing, Dyckman & Toynbee, Inc. v. George Schofield Co.,* 25 Wn. App. 580, 582, 612 P.2d 2, *review denied,* 93 Wn.2d 1029 (1980). Moreover, the evidence of prior violations pointed to by the Worths does not reflect "habitual or substantial" violations. There is no error.

Next, the Worths contend the court erred in ruling both foster and boarding home care constitute a business. They argue they are agents for the state in providing services to the elderly; the amount received on a "private pay" basis

roughly approximates what they would receive from the state for residents who qualify for state assistance.[3] Additionally, they point to the business and occupation tax statutes which define a business as "all activities engaged in with the object of gain . . ." and which exempts the adult family home from taxation. RCW 82.04.140, .327.

■■ In construing the meaning of a covenant, clear and unambiguous language will be given its manifest meaning; restrictions in derogation of the free use of land will not be extended to include any use not clearly expressed; doubts will be resolved in favor of the free use of land; and the instrument containing the restriction will be considered in its entirety with any attendant circumstances taken into consideration when the meaning is doubtful. *Burton v. Douglas Cy., supra* at 622; *Lenhoff v. Birch Bay Real Estate, Inc.*, 22 Wn. App. 70, 73, 587 P.2d 1087 (1978). *Burton* found the word "business" in a restrictive covenant ambiguous and adopted the definition found in *Easterbrook v. Hebrew Ladies Orphan Soc'y*, 85 Conn. 289, 299, 82 A. 561 (1912): "'. . . The word "business" in its ordinary and common use among men, is employed to designate human efforts which have for their end living or reward. It is not commonly used as descriptive of charitable, religious, educational, or social agencies. . . .'" *Burton*, at 623.

The evidence in this case reflects the Worths' living is primarily derived from the income received from their group home, they have employees other than family members and have depreciated their home on their federal income tax return as a business deduction. While the Worths' purpose in providing room, board, and services may be charitable in nature, as reflecting their loving and compassionate concern for the elderly, they are nevertheless making a living providing this service. The fact their home is licensed and is not subject to the state business

---

[3]The Worths rely on various provisions in RCW Title 74; effective May 14, 1989, the Legislature added chapter 427 which specifically deals with adult family home licensing.

and occupation tax is incidental to their underlying purpose of making a living. We conclude their activity in providing foster or boarding house care constitutes a business.

■ Our conclusion is bolstered by the other covenants contained in the declaration which reflect the plat was designed for "residential purposes". The term business is the antonym of residential and to provide residence to paying customers is not synonymous with a residential purpose.[4] *Seaton v. Clifford,* 100 Cal. Rptr. at 781 (operation of a state–licensed home for six mentally retarded persons constituted a business); *see also Barrett v. Lipscomb, supra; Shaver v. Hunter,* 626 S.W.2d 574 (Tex. Ct. App. 1981), *cert. denied,* 459 U.S. 1016 (1982). *But see Knudtson v. Trainor,* 216 Neb. 653, 345 N.W.2d 4 (1984); *J.T. Hobby & Son, Inc. v. Family Homes of Wake Cy., Inc.,* 274 S.E.2d 174 (N.C. 1981); *Beres v. Hope Homes, Inc.,* 6 Ohio App. 3d 71, 453 N.E.2d 1119 (1982), *cert. denied,* 464 U.S. 937 (1983); *Jackson v. Williams,* 714 P.2d 1017 (Okla. 1985). When the covenant restricting business of "any kind or nature" is viewed in context with the residential purpose of

---

[4]Although not raised by the parties, one could argue a number of unrelated persons residing together does not constitute a "family" for the purpose of the declaration restriction to "single–family residences". Although this question has not been decided in Washington, it has been subject to vigorous litigation elsewhere. No family relationship was found in *Barrett v. Lipscomb, supra; London v. Handicapped Facilities Bd.,* 637 S.W.2d 212 (Mo. Ct. App. 1982); *Crane Neck Ass'n, Inc. v. New York City/Long Island Cy. Serv. Group,* 61 N.Y.2d 154, 460 N.E.2d 1336, 472 N.Y.S.2d 901, 41 A.L.R.4th 1204, *cert. denied,* 469 U.S. 804 (1984); *Shaver v. Hunter,* 626 S.W.2d 574 (Tex. Ct. App. 1981), *cert. denied,* 459 U.S. 1016 (1982); *Omega Corp. v. Malloy,* 228 Va. 12, 319 S.E.2d 728 (1984), *cert. denied,* 469 U.S. 1192 (1985). *Contra, Welsch v. Goswick,* 130 Cal. App. 3d 398, 181 Cal. Rptr. 703 (1982); *Concord Estates Homeowners Ass'n, Inc. v. Special Children's Found., Inc.,* 459 So. 2d 1242 (La. Ct. App. 1984); *Livonia v. Department of Social Servs., Inc.,* 423 Mich. 466, 378 N.W.2d 402 (1985); *Costley v. Caromin House, Inc.,* 313 N.W.2d 21 (Minn. 1981); *State ex rel. Region II Child & Family Servs., Inc. v. Eighth Judicial Dist. Court,* 187 Mont. 126, 609 P.2d 245 (1980); *Knudtson v. Trainor,* 216 Neb. 653, 345 N.W.2d 4 (1984); *Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976); *J.T. Hobby & Son, Inc. v. Family Homes of Wake Cy., Inc.,* 274 S.E.2d 174 (N.C. 1981); *Beres v. Hope Homes, Inc.,* 6 Ohio App. 3d 71, 453 N.E.2d 1119 (1982), *cert. denied,* 464 U.S. 937 (1983); *Gregory v. State Dep't of Mental Health, Retardation & Hosps.,* 495 A.2d 997 (R.I. 1985); *Crowley v. Knapp,* 94 Wis. 2d 421, 288 N.W.2d 815 (1980).

the plat, we conclude the declaration was clearly intended to prohibit foster homes as well as boarding homes. The court did not err in so holding.[5]

Last, the Worths contend even if a foster home is a business, the injunction should not issue because the public's interest in encouraging foster home care overrides the homeowners' contractual right to enforce the covenant. We disagree.

■ It is true that in issuing an injunction, the court may consider, "if appropriate", the interest of the public. *Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). We believe encouraging the development of foster homes is a laudable public policy. *See* Laws of 1989, ch. 427, §§ 14, 15, effective May 14, 1989. However, the covenant does not impede furtherance of the public's interest in developing alternate residential care for the elderly; it does prohibit the location of that care facility when it violates the contractual rights of the parties. *See Barrett v. Lipscomb, supra; Shaver v. Hunter, supra.* In this context, we note section 35 of the Laws of 1989, ch. 427, which would have made adult homes a residential use of property for zoning purposes, was vetoed by the Governor. However, rezoning is contemplated by the act. *See* Laws of 1989, ch. 427, §§ 36–41. Even with rezoning, the issue of whether zoning may override the constitutional contractual right of

---

[5]The Worths' contention that the court's oral opinion and its findings are ambiguous as to whether the ruling encompassed foster homes is without merit. It is the findings, not the oral opinion, which are binding. *Huzzy v. Culbert Constr. Co.*, 5 Wn. App. 581, 489 P.2d 749 (1971). The court defined the activity engaged in was housing four to nine elderly residents between April 1985 until the date of trial (finding of fact 9) and concluded it was this activity which constituted a business (conclusion of law 5). The court's denial of the Worths' motion for reconsideration to limit its ruling to boarding homes reflects the court intended to encompass foster home activity. The Worths' contention that the Hagemanns' pleadings were not sufficient to put them on notice that they were seeking an injunction as to foster home care as well as the boarding home was raised for the first time in the Worths' reply brief and will not be considered. RAP 10.3(c). Last, the Worths' contention that the Attorney General should have been a party to this suit was not made an assignment of error nor do they point to the record to support this error; consequently, it will not be reviewed.

parties to covenant remains unanswered. *See Crane Neck Ass'n, Inc. v. New York City/Long Island Cy. Serv. Group,* 61 N.Y.2d 154, 460 N.E.2d 1336, 472 N.Y.S.2d 901, 41 A.L.R.4th 1204, *cert. denied,* 469 U.S. 804 (1984). In the interim, we conclude the covenant may be enforced and the injunction enjoining the Worths' business of providing residential care for the elderly at this location was properly issued.

The Hagemanns' request for attorney fees and costs based upon article 10 of the declaration and RAP 18.1 is granted in the amount of $1,599.77.

Affirmed.

THOMPSON, C.J., and GREEN, J., concur.