[No. G013975. Fourth Dist., Div. Three. May 23, 1994.]

BROADMOOR SAN CLEMENTE HOMEOWNERS ASSOCIATION, Plaintiff and Respondent, v.
ROBERT N. NELSON et al., Defendants and Appellants.

**COUNSEL**

Laurie A. Michelena for Defendants and Appellants.

Robert J. Legate for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, J.\***—In 1974, the developer of the Broadmoor homes recorded a declaration of covenants, conditions and restrictions (CC&Rs) which provided "no business or commercial activity shall be maintained or conducted upon any of the [Broadmoor homes]." In 1990, appellants Robert N. Nelson, individually and as trustee of the Robert N. Nelson and Elsie M. Nelson Revocable Living Trust, Alexis Edwards, and Rosehaven, a corporation (the Nelsons), purchased a home subject to the CC&Rs. Subsequently the Nelsons remodeled the home to make it suitable for use as a licensed "residential care facility for six or fewer non-ambulatory elderly adults which they called 'Rosehaven.'" This type of facility is subject to the California Residential Care Facilities for the Elderly Act. (Health & Saf. Code, § 1569 et seq.) The Nelsons commenced marketing the services of the home under the name "Rosehaven" and contemplated charging fees for services to be rendered to the residents.

Respondent Broadmoor San Clemente Homeowners Association commenced this action seeking an injunction contending the operation of such a residential care facility violated the CC&Rs. After a court trial on stipulated facts, the trial court found the proposed operation of "Rosehaven" constituted a business and therefore violated the CC&Rs. This finding was based on the fact the Nelsons contemplated charging fees to non-family-member residents. The court thereupon ordered judgment entered in favor of the association enjoining the Nelsons from (1) "owning, operating, marketing, managing or controlling a residential care facility for six or fewer people," (2) "advertising or soliciting for resident or potential residents for a residential care facility for six or fewer people," and (3) "contracting with any residents or potential residents of a residential care facility for six or fewer people." The appeal is from this judgment.

The appeal raises a number of issues relating to the reasonableness of the enforcement of the restriction, the factual basis therefore, and the procedures used in the enforcement of the restriction. The appeal further contends the judgment violates the Federal Fair Housing Act (42 U.S.C. § 3601 et seq.) After the briefs were filed, the Legislature amended Government Code sections 12955 and 12955.6, effective January 1, 1994, which, as we will discuss below, rendered the restriction in the CC&Rs, as applied to the facts of this case, unlawful. We permitted the parties to file supplemental briefs concerning the effect of these recent amendments. In view of our holding,

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

based on these recent amendments, we need not consider the other issues initially raised in the appeal.

I

APPLICABILITY OF SUBSEQUENT LEGISLATION TO RELIEF BY INJUNCTION

As a general rule, an appeal only determines whether the judgment was correctly rendered based on the facts presented to the trial court and the law as it existed at that time. (*Solomon* v. *Solomon* (1953) 118 Cal.App.2d 149, 155 [257 P.2d 760]; *People's Home Savings Bank* v. *Sadler* (1905) 1 Cal.App. 189, 193 [81 P. 1029]. See also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 52, p. 258.) However, the general rule does not apply to a judgment granting an injunction; "[s]ince relief by injunction operates in futuro, the right to such relief must be determined under the law which exists at the time of an appellate court's decision." (*California Satellite Systems, Inc.* v. *Nichols* (1985) 170 Cal.App.3d 56, 66 [216 Cal.Rptr. 180].)

In the light of the legislative determination characterizing the restrictive covenant under the facts of this case as an unlawful discrimination because of disability, it would be inappropriate for us to review the judgment only on the basis of the law as it existed at the time of the judgment. Were we to affirm on the basis of the prior law, we would be performing an idle act since the Nelsons would have the right to obtain a subsequent modification of the judgment based on the changes in the law.

II

LAW IN EFFECT AT TIME OF JUDGMENT

Health and Safety Code section 1569.87, part of the California Residential Care Facilities for the Elderly Act (Health & Saf. Code, § 1569 et seq.), adopted in 1985, provides: "For the purposes of any contract, deed, or covenant for the transfer of real property executed *on or after January 1, 1979*, a residential facility for the elderly which serves six or fewer persons shall be considered a residential use of property and a use of property by a single family, notwithstanding any disclaimers to the contrary." (Italics added.) The restrictive covenant at issue herein was created by CC&Rs recorded in 1974. *Barrett* v. *Lipscomb* (1987) 194 Cal.App.3d 1524 [240 Cal.Rptr. 336] held Health and Safety Code section 1566.5, enacted in 1978, which imposed a similar condition for the benefit of this type of facility prior to the enactment of section 1569.87, did not invalidate pre-1979 covenants restricting the operation of residential facilities for the elderly.

*Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398 [181 Cal.Rptr. 703], contrary to *Barrett* v. *Lipscomb, supra,* 194 Cal.App.3d 1542, held Health and Safety Code section 1566.5 did "not attempt to reach covenants entered into before 1979" (130 Cal.App.3d at p. 407) and hence the validity of such pre-1979 restrictions was left open for the court to decide. *Welsch* went on to hold such pre-1979 covenants restricting an identical use were nevertheless invalid because "recent changes in the social fabric convince us that operation of a residential care facility for six or fewer residents is not inconsistent with a single-family residential purpose restriction." (*Id.* at p. 408.) In so doing, the *Welsch* court stretched the rules of statutory interpretation beyond permissible limits.

We agree with *Barrett* v. *Lipscomb, supra,* 194 Cal.App.3d 1524: "[t]he language of section 1566.5 [and the similar language of section 1569.87] is so clear and unambiguous that there is no room for interpretation." (*Id.* at p. 1530.) From the very language of the statute it is clear the Legislature intended to exempt pre-1979 covenants. "The fundamental tenet of statutory construction is that a court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining the intent of the Legislature, the court must first look to the language of the statute. If that language is clear and unambiguous and there is no question as to the Legislature's intent, there is no need for construction and courts should not indulge in it." (*Carlton Browne & Co.* v. *Superior Court* (1989) 210 Cal.App.3d 35, 40 [258 Cal.Rptr. 118].)

We therefore agree with the trial court's interpretation of Health and Safety Code section 1569.87 in accordance with the analysis of *Barrett* v. *Lipscomb, supra,* 194 Cal.App.3d 1524. Under the then-existing statutory scheme, the 1974 covenant prohibiting the use contemplated by the Nelsons was valid.

### III

### EFFECT OF 1993 AMENDMENT TO GOVERNMENT CODE SECTIONS 12955 AND 12955.6

In 1993, the Legislature amended Government Code section 12955, part of the California Fair Employment and Housing Act, to provide: "It shall be unlawful . . . [¶] (1) To discriminate through public or private land use practices, decisions, and authorizations because of . . . disability. . . . Discrimination includes, but is not limited to, restrictive covenants . . . ." Government Code section 12955.6, part of the same act, was amended to provide: "Any state law that purports to require or permit any action that

would be an unlawful practice under this part shall to that extent be invalid." Health and Safety Code section 1569.87 permits restrictive covenants executed before 1979 to prohibit residential care facilities for the elderly. It therefore appears from the face of Government Code sections 12955 and 12955.6 that the portion of section 1569.87 containing such permission has been repealed. The legislative intent expressly stated in the act amending sections 12955 and 12955.6 confirms this conclusion.

The act amending the Fair Employment and Housing Act, provides, in describing the legislative intent, "[i]t is the Legislature's intent to make the following findings and declarations regarding unlawful housing practices prohibited by this act: [¶] (a) That public and private land use practices, decisions, and authorizations have restricted, in residentially zoned areas, the establishment and operation of group housing. . . . [¶] (b) That persons with disabilities . . . are significantly more likely than other persons to live with unrelated persons in group housing. [¶] (c) That this act covers unlawful discriminatory restrictions against group housing for these persons." (Stats. 1993, ch. 1277, § 18; 12 West Cal. Legis. Services, p. 6038.)

Government Code section 12955.3 defines "disability" in part as "A physical or mental impairment that substantially limits one or more of a person's major life activities." The facility at issue herein, was intended to house "non-ambulatory elderly adults." A "residential care facility for the elderly" is defined in Health and Safety Code section 1569.2, subdivision (k), as a housing arrangement for persons 60 years of age or over providing "varying levels and intensities of care and supervision, protective supervision, or personal care." Such group homes are therefore facilities intended to provide for persons with disabilities.

Health and Safety Code section 1569.87, on its face, and as interpreted by *Barrett* v. *Lipscomb, supra,* 194 Cal.App.3d 1524, with respect to pre-1979 covenants, purports to permit restrictive covenants to exclude group homes for elderly persons with disabilities. The expressed legislative intent indicates this is the type of discrimination which Government Code section 12955 intended to make unlawful. Therefore, the exclusion for pre-1979 covenants contained in section 1569.87 has been invalidated by Government Code section 12955.6.

The association's supplemental brief questions such a reading of the statute. Accordingly, we reviewed the legislative history and find it confirms our reading of the statute. As discussed below, it clearly was the intent of the Legislature, in adopting the 1993 amendments, to conform California law on

the subject of fair housing to the Federal Fair Housing Act. Reviewing cases under that act, we find enforcement of the restrictive covenant, under the facts presented here, violative of the statute.

*Legislative History of 1993 Amendments to Government Code Sections 12955 and 12955.6:*

The amendments to Government Code sections 12955 and 12955.6 originated as Assembly Bill No. 2244 (1993-1994 Reg. Sess.). An analysis of the bill prepared for the Assembly Committee on Judiciary defines the subject of the bill as "This bill conforms state housing discrimination law with federal law." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 21, 1993) p. 1.) In this connection, the analysis notes the proposed legislation "[p]rovides that discriminatory land use regulations, zoning laws and restrictive covenants are unlawful acts," (*id.* at p. 2) and that the proposed legislation "[p]rovides that violation of the FEHA (Fair Employment and Housing Act) may be proved by establishing . . . [that] an act or failure to act has the *effect*, regardless of intent, of unlawful discrimination (discriminatory effect)." (*Id.* at p. 3.) A subsequent analysis prepared for the same committee contains identical language. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 28, 1993) pp. 1-3.)

The committee analyses contain the following statement attributed to the author of the bill: "this bill is necessary to 'clean-up substantive and technical problems' with the Fair Employment and Housing Act, as amended by SB 1234 of 1992. The author points out that HUD has identified a number of 'significant differences' between the FEHA and federal law and, therefore, has not certified California law as 'substantially equivalent' to federal fair housing law and procedure. The lack of certification has resulted in loss of substantial federal funds to enforce fair housing laws. [¶] The author contends that this bill responds to various modifications to the FEHA suggested in correspondence with HUD regarding the deficiencies in California's FEHA. The author argues that, if adopted, this bill will result in California law being 'substantially equivalent' to federal fair housing laws and, thereby, eligible to certification to receive federal funding." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 21, 1993) pp. 4-5; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 28, 1993) pp. 4-5.) In providing an example of discrepancies between federal and California law, the committee analyses reference *Casa Marie, Inc.* v. *Superior Court of Puerto Rico* (D.P.R. 1990) 752 F.Supp. 1152, which enjoined enforcement of a restrictive covenant to prevent operation of a group home for the disabled elderly. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 21, 1993) p. 6; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Apr. 28, 1993) p. 6.)

An analysis of Assembly Bill No. 2244 prepared for the Assembly Ways and Means Committee likewise indicates the bill is intended to bring state law "into conformance with provisions of federal law, known as the Fair Housing Amendment Act (FHAA) of 1988." (Assem. Ways & Means Com., Analysis on Assem. Bill No. 2244 (1993-1994 Reg. Sess.), June 2, 1993.) Similar language is also contained in the analysis prepared for the Senate Committee on Judiciary (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Aug. 17, 1993, & Aug. 24, 1993)) and the Senate Rules Committee (Sen. Rules Com., Rep. on Assem. Bill No. 2244 (1993-1994 Reg. Sess.) (Aug. 24, 1993)). It is therefore clear it was the intent of the Legislature, in amending Government Code sections 12955 and 12955.6 to conform California's housing statutes to federal law.

*Validity of Restrictive Covenants to Prohibit Group Housing for the Handicapped Under Federal Law:*

The Federal Fair Housing Act of 1968, was amended in 1988, to make it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . [¶] a person, residing in or intending to reside in that dwelling after it is so sold, rented, or made available. . . ." (42 U.S.C. § 3604(f)(1).) Restrictions on housing accommodations for the disabled violate the Federal Fair Housing Act as amended in 1988. (*Marbrunak, Inc.* v. *City of Stow, Ohio* (6th Cir. 1992) 974 F.2d 43.) *U.S.* v. *Scott* (D.Kan. 1992) 788 F.Supp. 1555 asked the question: "Specifically, does the enforcement of restrictive covenants for the purpose of discriminating against handicapped individuals constitute a violation of the Act?" (*Id.* at p. 1561.) In answering this question in the affirmative, the court reviewed the legislative history of the Federal Fair Housing Act, and noted "[i]n discussing the scope of the amended Act, the House Committee on the Judiciary stated that the Act 'is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's handicap and which . . . exclud[e], for example, congregate living arrangements for persons with handicaps." (*Ibid.*) The court also relied on *Casa Marie, Inc.* v. *Superior Court of Puerto Rico, supra,* 752 F.Supp. 1152 where "the court held that the Fair Housing Act was violated by the defendants' enforcement of a neutral restrictive covenant in state court to terminate the operation of a home for the handicapped." (*U.S.* v. *Scott, supra,* at p. 1561.)

In *Rhodes* v. *Palmetto Pathway Homes, Inc.* (1991) 303 S.C. 308 [400 S.E.2d 484], a subdivision was subject to a restrictive covenant which limited the use of the property to "private residential purposes." Rhodes, an owner of real property in the subdivision, obtained an injunction in the trial court restraining Palmetto from establishing a group residence for mentally

impaired adults. The decision, as in the case now before us, was based upon a finding by the trial court that Palmetto's operation was contemplated to be of a commercial nature. The Supreme Court of South Carolina concluded, "interpretation of the restrictive covenants in such a way as to prohibit location of a group residence for mentally impaired adults in a community is contrary to public policy as enunciated by both state and federal legislation." (*Id.* at p. 486.) The court went on to note: "The Fair Housing Amendments Act of 1988 articulates the public policy of the United States as being to encourage and support handicapped persons' right to live in a group home in the community of their choice. [Citation.] 'This provision is intended to prohibit special restrictive covenants . . . which have the effect of excluding . . . congregate living arrangements for persons with handicaps.' " (*Ibid.*)

*Effect of Amendments Conforming California Housing Law to Federal Standards:*

It was the clear intent of the Legislature in enacting the 1993 amendments to Government Code sections 12955 and 12955.6 to bring California housing legislation in full compliance with federal law. Federal law prohibits enforcement of a restrictive covenant which has the effect of excluding group homes for the handicapped. The legislative intent expressed as part of the amendments, specifically refers to the desirability of making group housing for the disabled available in residential areas. (Stats. 1993, ch. 1277, § 18.) Accordingly, the portion of Government Code section 12955.6 invalidating "[a]ny state law that purports to . . . permit any action that would be an unlawful practice under this part," (italics omitted) was intended to and did invalidate the portion of Health and Safety Code section 1569.87 which permitted the use of pre-1979 restrictive covenants to be employed to exclude group homes for the disabled elderly.

IV

CONSTITUTIONAL ISSUES NOT CONSIDERED

*Seaton* v. *Clifford* (1972) 24 Cal.App.3d 46, 52 [100 Cal.Rptr. 779] suggests an attempt by the state to delete protections afforded by restrictive covenants may be an impairment of private contractual and property rights under United States Constitution, article I, section 10 and California Constitution, article I, section 16. Therefore, arguably the action by the Legislature to invalidate the restrictive covenant at issue herein may raise constitutional issues.

We invited the parties to submit additional briefs on the issue of whether, if the Legislature intended by the enactment of Government Code section

12955.6 to invalidate the pre-1979 exemption as interpreted in *Barrett* v. *Lipscomb, supra,* 194 Cal.App.3d 1524, there are any constitutional limitations on the power of the Legislature to accomplish this effect. Counsel for the association declined our invitation to brief this issue. They responded that, in view of their position the Legislature did not intend to invalidate the exemption, "it does not appear necessary to address this issue."

In the light of counsel's failure to address the issue, although we requested they do so, we consider any constitutional issues the association might raise as having been waived.

### DISPOSITION

The judgment is reversed; the court shall enter judgment for defendant. Each party to bear its own costs and attorney fees on appeal.

Sills, P. J., and Crosby, J., concurred.