[No. B037541. Second Dist., Div. Four. May 3, 1989.]

CARLTON BROWNE AND COMPANY, INC., et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CHARTERHOUSE INVESTMENT COMPANY, Real Party in
Interest.

COUNSEL

Augustini, Wheeler & Dorman, Alfred E. Augustini and Kirk D. Dillman for Petitioners.

No appearance for Respondent.

Layman, Jones & Dye, David W. Wiechert and Susan R. Wiech for Real Party in Interest.

OPINION

McCLOSKY, Acting P. J.—Presented for resolution in this original proceeding in mandate is the question of whether a corporate defendant's written waiver of the statute of limitations which is signed by the corporate defendant's attorney-agent comports with the requirement of Code of Civil Procedure section 360.5[1] that a waiver of the statute of limitations be "signed by the person obligated." We hold that it does.

PROCEDURAL BACKGROUND

On May 17, 1988, plaintiff and real party in interest Charterhouse Investment Company, a California corporation (Charterhouse), filed a complaint naming Long Beach Airport Business Park (LBABP), petitioners Carlton Browne and Company, Inc., and Signal Development Corporation, as defendants. Therein Charterhouse alleged two causes of action, the first for breach of written contract and the second for common count for services rendered. The second cause of action was based upon the same breach of contract alleged in the first cause of action. Both causes of action are alleged to have arisen on July 9, 1982, more than five years and ten months before Charterhouse filed its complaint.

In its complaint, Charterhouse specifically alleged the following: On May 13, 1982, it entered into a written agreement with LBABP. Under the terms of this agreement Charterhouse agreed to render mortgage banking services

---

[1] All statutory references are to the Code of Civil Procedure unless noted otherwise.

to obtain a leasehold mortgage loan commitment for LBABP. In exchange for these services, LBABP agreed to pay Charterhouse a commission of 1.5 percent of the principal amount of any loan procured by Charterhouse and accepted by LBABP.

On July 9, 1982, Charterhouse obtained a $6 million loan commitment for a leasehold mortgage loan from New England Life Insurance Co. LBABP accepted the loan commitment in writing and became obligated to pay Charterhouse a commission in the amount of $90,000.

With the exception of $20,750 which LBABP gave Charterhouse as a deposit and which Charterhouse applied to the commission, LBABP has refused to pay Charterhouse the $69,250 remainder of its commission thereby breaching its agreement.

In July 1983, New England Mutual Life Insurance Company filed an action against petitioners in federal court as the result of the latter's repudiation of the loan. In that action, petitioners were represented by Howard J. Privett of McCutchen, Black, Verleger & Shea.

Prior to August 25, 1983, Charterhouse demanded in writing that petitioners pay the commission to which it was entitled and informed them that it would file an action to recover its commission if not paid.

On August 24, 1983, Mr. Privett told Charterhouse's counsel that he had spoken to petitioners about Charterhouse's demand for payment and threat to institute legal action. Mr. Privett stated that petitioners agreed that Charterhouse could defer filing a lawsuit as they would not assert Charterhouse's delay as a defense or bar to any legal action instituted by Charterhouse to recover the unpaid commission.

On August 25, 1983, Mr. Privett confirmed this agreement in writing. The written waiver was not attached to, or incorporated into, the complaint.[2] Its legal effect was, however, pled therein. Charterhouse alleged that it relied upon Mr. Privett's representation as well as the written waiver in refraining from filing this action until after the statute of limitations had run.

On August 19, 1988, petitioners filed a demurrer to Charterhouse's complaint. They demurred to both causes of action on the ground that Charter-

---

[2] Charterhouse attached a copy of the written waiver, as well as a copy of the written demand for payment, to its answer to the petition for writ of mandate. As those documents were not part of the complaint, and were not before the trial court when it ruled, they are not properly before us and will not be considered by us. We do, however, consider the legal effect of the waiver which was properly pleaded by Charterhouse in its complaint.

house failed to set forth facts sufficient to constitute a cause of action against petitioners inasmuch as each of its causes of action is barred by the applicable four-year statute of limitations. (§§ 337 and 430.10, subd. (e).)

In their memorandum of points and authorities, petitioners argued that section 360.5 requires a waiver of the statute of limitations to be in writing and signed by the person obligated and that Charterhouse in its complaint failed to allege the existence of a waiver signed by petitioners themselves. They argued that a waiver signed by their counsel was not sufficient under section 360.5.

On September 1, 1988, Charterhouse filed its memorandum of points and authorities in opposition to the demurrer to the complaint. It argued that section 360.5 allows a waiver to be signed by a defendant's agent and, alternatively, if the waiver is invalid, petitioners are estopped from asserting the statute of limitations as a defense.

On September 9, 1988, the trial court overruled petitioners' demurrer and granted them 30 days to answer the complaint. The court reasoned that a corporation can only act through its agents and that an attorney is an agent of the corporation. The trial court further ruled that the equal dignities rule does not apply to corporations, stating that it "would require that every act of the corporation be backed up by a writing authorizing its agents."

The present petition followed on October 4, 1988. On October 6, 1988, we ordered that the trial court's September 9, 1988, order requiring petitioners to file a responsive pleading to the complaint within 30 days be stayed in effect until further order of this court.

DISCUSSION

Charterhouse's entire action is based upon a "contract, obligation or liability founded upon an instrument in writing" and hence had to be commenced "[w]ithin four years" of the date that the causes of action accrued. (§§ 335 and 337.)

In its complaint, Charterhouse alleged that its causes of action for breach of contract and on the common count to recover for services rendered accrued on July 9, 1982, when petitioners refused to pay the commission. In the absence of a waiver or tolling of the statute of limitations, the last day on which to file this action was July 9, 1986.

To circumvent the effect of the statute of limitations defense Charterhouse alleged that the written waiver of the statute of limitations signed

by petitioners' counsel constituted a valid waiver of the statute of limitations defense and estopped petitioners from asserting it.

Section 360.5 provides: *"No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated.* No waiver executed prior to the expiration of the time limited for the commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title and no waiver executed after the expiration of such time shall be effective for a period exceeding four years from the date thereof, but any such waiver may be renewed for a further period of not exceeding four years from the expiration of the immediately preceding waiver. Such waivers may be made successively. The provisions of this section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid or the repayment of moneys fraudulently or illegally obtained from the county." (Italics added.)

■ The fundamental tenet of statutory construction is that a court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining the intent of the Legislature, the court must first look to the language of the statute. If that language is clear and unambiguous and there is no question as to the Legislature's intent, there is no need for construction, and courts should not indulge in it. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218 [188 Cal.Rptr. 115, 655 P.2d 317]; *Barrett* v. *Lipscomb* (1987) 194 Cal.App.3d 1524, 1530 [240 Cal.Rptr. 336].) In such an instance, the court must follow the language of the statute and give it its plain meaning. (*Forrest* v. *Trustees of Cal. State University & Colleges* (1984) 160 Cal.App.3d 357, 362 [206 Cal.Rptr. 595].) ■ However, "[i]f the statutory language is reasonably susceptible of two disputed meanings, it is ambiguous in that respect" and "the plain meaning rule affords no sanctuary from consideration of extrinsic aids to construction." (*Swift* v. *County of Placer* (1984) 153 Cal.App.3d 209, 214 [200 Cal.Rptr. 181].) When considering extrinsic aids, "legislative history, comments by commissions that proposed the statute, and interpretative comments by official commissions such as [the California Law Revision Commission] as to legislative purpose are entitled to significant weight." (*Dieckmann* v. *Superior Court* (1985) 175 Cal.App.3d 345, 353 [220 Cal.Rptr. 602].) "Statements of legislative committees pertaining to the purpose of legislation are presumed to express the legislative intent of statutes as enacted." (*Altaville Drug Store, Inc.* v. *Employment Development Department* (1988) 44 Cal.3d 231, 238 [242 Cal.Rptr. 732, 746 P.2d 871].)

The Legislative Counsel's Digest i s also relevant when attempting to ascertain the intent of the Legislature. (*California Teachers' Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606, 613 [190 Cal.Rptr. 453].)[3]

■ Section 360.5's requirement that a waiver of the statute of limitation be signed by the "person obligated" is ambiguous in that it can reasonably be construed to mean that such a waiver must be signed by the defendant personally or, given fundamental principles of agency, that it may alternatively be signed by the defendant's authorized agent.

Prior to section 360.5's enactment in 1951, a permanent waiver of the statute of limitations or a 99-year waiver was held to be valid. (*Dexter* v. *Pierson* (1931) 214 Cal. 247, 251 [4 P.2d 932]; *Brownrigg* v. *DeFrees* (1925) 196 Cal. 534, 540-546 [238 P. 714]; *Hasman* v. *Canman* (1933) 136 Cal.App. 91, 96 [28 P.2d 372].) These decisions permitted lenders to condition the extension of credit on receipt of a perpetual waiver of the statute of limitations.

Section 360.5 put an end to this practice. As enacted in 1951, section 360.5 provided: "No acknowledgment, promise or any form of waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the acknowledgment, promise or any form of waiver is in writing and signed by the person obligated. No such acknowledgment, promise or any form of waiver executed prior or subsequent to the expiration of the time limited for commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title, but such waiver may be renewed for a further period of not exceeding four years upon the expiration of the immediately preceding waiver. Such waivers may be made successively."

The Legislative Counsel's Digest of Assembly Bill No. 370 which added section 360.5 to the Code of Civil Procedure explained the purpose of the bill as follows: "Invalidates any form of waiver of statutes of limitations unless in writing signed by person obligated. Provides such waiver is

---

[3] Real party in interest Charterhouse has requested that we take judicial notice of the legislative history of section 360.5, which it received from the Legislative Intent Service. Pursuant to Evidence Code sections 452 and 459 we take judicial notice of the following: 1. Excerpt from the 1951 Summary Digest of Statutes Enacted prepared by the Legislative Counsel regarding Assembly Bill No. 310 through which section 360.5 was enacted into law.

2. Excerpt from the 1953 Summary Digest of Statutes Enacted prepared by the Legislative Counsel regarding Senate Bill No. 681 through which section 360.5 was amended.

3. Excerpt regarding section 360.5 in the Second Progress Report to the Legislature prepared by the Senate Interim Judiciary Committee.

effective for not more than 4 years from expiration of time limited. Authorizes successive renewals of such waivers."

In 1953, section 360.5 was amended to read as it currently exists. With regard to Senate Bill No. 681 which amended section 360.5, the Legislative Counsel's Digest provides: "Changes subject matter of the section from 'acknowledgment, promise, or any form of waiver' to simply 'waiver.'

"Changes limitation on effectiveness of waiver of statute of limitations executed after statutory period has run from four years from the date of termination of the period to four years from date of waiver.

"Permits renewal for same period from, rather than upon, expiration of immediately preceding waiver.

"Provides that section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by person obligated and given to any county to secure repayment of indigent aid or repayment of moneys fraudulently or illegally obtained from county."

With regard to the proposed amendment to section 360.5, the Senate Interim Judiciary Committee noted in its report: "In 1947 Section 360 of the Code of Civil Procedure was amended so as to provide that the statute of limitations on a promissory note should not commence to run until the last payment of principal or interest made by the party to be charged prior to the time when the statute of limitations would otherwise have run. The purpose of this amendment was to make unnecessary the successive renewal of promissory notes and recording of mortgages or deeds of trust every four years in those cases in which the borrower continued to regularly make payments on account of principal or interest. The rule theretofore was that a payment on account of interest or principal would toll the statute only if in addition to the mere fact of payment there existed some acknowledgment of the debt or promise to pay it. This amendment has made it possible for lenders to carry borrowers without either commencing suit or compelling a renewal of the obligation so long as the borrower kept up his payments.

"In 1951 Section 360.5 was added to the code, designed to prevent the exaction for purchasers or borrowers of an unlimited and indefinite waiver of the statute of limitations at the time credit was extended or a loan made. This amendment was intended not only to require that waivers of the statute be in writing but that no one waiver could waive the statute for a period of more than four years beyond the time when the statute would otherwise have run. To this proposal there was no objection. Unfortunately

the draftsman unnecessarily copied some of the language from Section 360 and thereby threw some doubt upon the present meaning of Section 360.

"The new section 360.5 begins: 'No acknowledgment, promise, or any form of waiver' shall be effective unless in writing signed by the person obligated. Section 360 already requires that an acknowledgment or promise to be effective to toll the statute of limitations must be in writing and there is no need for a repetition of this requirement in Section 360.5. By including it in Section 360.5, however, it being a later amendment than the amendment to Section 360, the question is raised as to whether a payment on account of principal or interest would toll the statute in the absence of such payment being in writing signed by the party to be charged.

"The confusion can easily be clarified by limiting Section 360.5 to the subject of waivers.

"Also, it would seem wise to eliminate from the second sentence of the section the words 'or subsequent' because the inclusion of these words would seem to have the effect of making it impossible for a person under any circumstances to waive the defense of the statute of limitations more than four years after the statute had run. Also, it would seem that the word 'upon' in the second sentence should be 'from.'

"The proposed amendment makes these changes."

■ Nothing in the legislative history of section 360.5 indicates that the Legislature intended to invalidate a waiver signed by an agent authorized by the defendant to waive the statute of limitations. Application of the law of agency would in no way defeat the purpose of section 360.5. Moreover, we assume that the Legislature was aware of the law of agency when it enacted section 360.5. (*In re Mark K.* (1984) 159 Cal.App.3d 94, 106 [205 Cal.Rptr. 393].)

Petitioners contend, however, that the Legislature intended section 360.5 to be interpreted in pari materia with sections 1133 and 360 and Civil Code section 1624.

■ When a statute is ambiguous, the intent of the Legislature may be ascertained from other statutes dealing with the same subject matter. (*In re Mark K., supra,* 159 Cal.App.3d at p. 106.) Related statutes are commonly referred to as statutes in pari materia. (*Wood* v. *Woods* (1982) 133 Cal.App.3d 954, 964 [184 Cal.Rptr. 471].)

Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.

(*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) In the construction of a particular statute or any of its provisions, all acts relating to the same subject matter or having the same general purpose should be read together as constituting one law. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590 [116 Cal.Rptr. 376, 526 P.2d 528].)

Civil Code section 1624, commonly referred to as the statute of frauds, in pertinent part provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent . . . ." Its purpose is to prevent fraud and perjury by requiring that certain contracts are not enforceable unless they are evidenced by a signed writing. (*Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 509 [131 Cal.Rptr. 381, 551 P.2d 1213].)

Section 1133 prescribes the form and contents of a writing required for a confession of judgment without action. That section requires a written statement "signed by the defendant, and verified by his oath."

 Nothing in the legislative history of section 360.5 indicates expressly or impliedly that the Legislature intended it to operate together with Civil Code section 1624 or section 1133. Section 360.5 does not relate to the same subject matter or have the same general purpose as Civil Code section 1624 or section 1133. This is true even though all three of these statutes require a signed writing. Moreover, section 1133's requirement of an oath precludes application of agency principles since an oath must be made personally.

Section 360, however, like section 360.5, relates to the statute of limitations. In relevant part it provides: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby, . . ." Section 360 sets forth the kind of evidence needed to prove the existence of a promise or acknowledgment of a new or continuing contract which tolls the statute of limitations (*Easton* v. *Ash* (1941) 18 Cal.2d 530, 536 [116 P.2d 433]), while section 360.5 sets forth the kind of evidence needed to prove the existence of a waiver of the statute of limitations. Neither section 360.5 nor section 360 expressly provides for a writing signed by an authorized agent.

Petitioners rely on dicta in *Maurer* v. *Bernardo* (1931) 118 Cal.App. 290 [5 P.2d 36], in support of their contention that section 360 excludes agents as proper signators and that therefore section 360.5 should similarly be

construed. In *Maurer,* plaintiff appealed from a judgment entered in favor of the obligor on a promissory note after the trial court found the action barred by the statute of limitations. On appeal, plaintiff contended that certain letters between its counsel and counsel for the obligor constituted a waiver of a portion of the limitations period under section 360. The *Maurer* court rejected plaintiff's argument and affirmed the judgment. It concluded that the letters did not waive the limitations period for a length of time sufficient enough to save plaintiff's action. In dicta, the court further concluded that "[n]one of this correspondence was signed by defendant, 'the party to be charged', as required by section 360 of the Code of Civil Procedure." (118 Cal.App. at p. 295.)

In *Moore* v. *Gould* (1907) 151 Cal. 723 [91 P. 616] his state's high court held that instruments renewing a mortgage and promissory note which were signed by defendant Gould as attorney in fact of defendant Peterson, constituted a renewal of the note and mortgage within the meaning of Civil Code section 2922 and that each instrument operated to start a new limitations period under section 360 because each contained an acknowledgment of the debt.

In *Martindell* v. *Bodrero* (1967) 256 Cal.App.2d 56 [63 Cal.Rptr. 774], an authorized partial payment by a corporation on behalf of the individual makers of a note was held to constitute payment by the person charged within the meaning of section 360. The *Martindell* court stated, "The question of authority in the context of the facts at bench is similar to any agency. Whether an actual or ostensible authority existed to make the corporation an actual agent of all the makers, in respect of the $200 payment, was a question of fact. Such agency may be shown by direct or circumstantial evidence." (256 Cal.App.2d at p. 60.)

Because a written acknowledgment or promise of a debt signed by an authorized agent has been held to constitute a writing signed by the "party to be charged" within the meaning of section 360 and therefore starts a new limitations period, we conclude that section 360.5 must similarly be construed. We therefore hold that a written waiver of the statute of limitations which is signed by an authorized agent is for all intents and purposes signed by the "person obligated" as required by section 360.5 and is therefore valid.

Although we are cognizant that section 360.5 uses the term "person obligated" while section 360 uses the term "party to be charged," we do not believe that the difference in language requires a different resolution on the question of whether section 360.5 excludes agents as authorized signators.

The maxim *expressio unius est exclusio alterius,* under which the expression of certain things in a statute implies the intentional exclusion of things not expressed, does not prevent us from construing section 360.5 as validating written waivers of the statute of limitations signed by a defendant's authorized agent.

Section 360 was enacted in 1872. *Moore* was decided in 1907 well before section 360.5 was enacted. In enacting and amending section 360, we assume that the Legislature was aware of the *Moore* decision. (*In re Mark K.,* *supra,* 159 Cal.App.3d at p. 106.)

Petitioners contend that even if we construe section 360.5 to validate written waivers of the statute of limitations signed by authorized agents, Charterhouse's complaint is still fatally defective because it contains no allegations that Mr. Privett's authorization to sign the written waiver on petitioners' behalf was in writing. This contention lacks merit.

■ Civil Code section 2309 which sets forth the so called equal dignities rule provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

Because a written waiver of the statute of limitations is not a contract, the equal dignities rule does not apply and affords no solace to petitioners.

In light of our conclusion that section 360.5 does not invalidate a written waiver of the statute of limitations signed by defendant's authorized agent, we need not, and do not, decide whether Charterhouse alleged sufficient facts which would estop petitioners from raising the statute of limitations defense.

The alternative writ is discharged and peremptory writ is denied. Our October 6, 1988, order staying the effect of the trial court's September 9, 1988, order will terminate when the decision of this court becomes final.

George, J., and Goertzen, J., concurred.

Petitioners' application for review by the Supreme Court was denied July 12, 1989.