[No. B227304. Second Dist., Div. Five. Oct. 1, 2012.]

DON JOHNSON PRODUCTIONS, INC., Plaintiff and Appellant, v.
RYSHER ENTERTAINMENT, LLC, et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III.A.1.d. through III.B. of the majority opinion and part B. of the dissenting opinion.

## COUNSEL

Kirkland & Ellis, Mark Holscher, Jeffrey S. Sinek, Christopher Landau and Michael Shipley for Plaintiff and Appellant.

Horvitz & Levy, Frederic D. Cohen, Lisa Perrochet, John A. Taylor, Jr.; Munger Tolles & Olson, Bart H. Williams, Manuel F. Cachán and Soraya C. Kelly for Defendant and Appellant Rysher Entertainment, LLC.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., and Theano Evangelis Kapur for Defendant and Appellant 2929 Entertainment, LP.

O'Melveny & Myers, Charles P. Diamond, Alicia Hancock and Amy R. Lucas for Defendant and Appellant Qualia Capital, LLC.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendants, Rysher Entertainment, LLC, 2929 Entertainment, LP, and Qualia Capital, LLC, appeal from a judgment entered in favor of plaintiff, Don Johnson Productions, Inc. On December 7, 1994, plaintiff and Rysher Entertainment, LLC, entered into a contract for the services of an actor, Don Johnson. Entitled the "Term Agreement" (the contract), it provided for production of the *Nash Bridges* television series (the series). In the published portion of this opinion, we address defendants' contention that a tolling agreement is governed by Code of Civil Procedure[1] section 360.5. As will be discussed, section 360.5 has a requirement that a waiver of the statute of limitations be renewed every four years. Defendants argue an agreement to toll the statute of limitations is governed by the section 360.5 requirement that it *be renewed every four years*. We conclude the agreement to toll the statute of limitations in this case is not subject to section 360.5. In the unpublished portion of the opinion, we will explain why we modify the damage award and dismiss plaintiff's cross-appeal.

## II. FIRST AMENDED COMPLAINT

On November 1, 1994, CBS Television and plaintiff entered into development agreements to air 22 episodes of the series. On December 7, 1994, plaintiff and Rysher Entertainment, LLC, entered into the contract governing the production of the series. Pursuant to paragraph II-12 of the contract, plaintiff owned a 50 percent interest in the series copyright. During the course of the production of the series, the contract was extended in 1997, 1998 and 1999. CBS Television aired the final episode on May 4, 2001. Rysher Entertainment, LLC, was contractually obligated to fund production of the series.

---

[1] Future statutory references are to the Code of Civil Procedure unless otherwise noted.

In 2001, 2929 Entertainment, LP, purchased Rysher Entertainment, LLC, which owned an extensive catalogue of television programs. According to the first amended complaint, Rysher Entertainment, LLC, "was a mere shell corporation with no employees or offices" which was operated by 2929 Entertainment, LP. In 2006, 2929 Entertainment, LP, sold Rysher Entertainment, LLC, to Qualia Capital, LLC, the present owner. As in the case of 2929 Entertainment, LP, Qualia Capital, LLC, operated Rysher Entertainment, LLC. Prior to 2008, Qualia Capital, LLC, dissolved Rysher Entertainment, LLC. Both 2929 Entertainment, LP, and Qualia Capital, LLC, were the alter egos of Rysher Entertainment, LLC.

In 1999, Rysher Entertainment, LLC, sold the syndication rights of the series to USA Network. Plaintiff was not a party to the syndication agreements. Since then, the series has been syndicated worldwide. As noted, pursuant to paragraph II-12, plaintiff is a 50 percent owner of the series copyright. Plaintiff is entitled to a 50 percent exploitation of the copyright. Rysher Entertainment, LLC, which was obligated to remit 50 percent of any profit to plaintiff, failed to do so.

Under the terms of the contract with Rysher Entertainment, LLC, plaintiff is entitled to 50 percent of the profits of contingent compensation. The first amended complaint describes plaintiff's contingent compensation rights in paragraph II-4 of the contract: "In addition to providing [plaintiff] 50% ownership in the Series copyright, the [contract], under Section II-4, also guaranteed [plaintiff] 50% of all gross receipts (AGR), which is defined as all gross receipts from all sources received by Rysher [Entertainment, LLC] or any affiliated entity after the deduction of (i) a 15% distribution fee to Rysher [Entertainment, LLC], (ii) distribution costs, (iii) direct production costs, and (iv) interest on the net deficited portion of the direct production costs." Despite the fact Rysher Entertainment, LLC, reported $316 million in receipts, it claimed a deficit of $150 million existed. This provision, according to the first amended complaint, had no effect on plaintiff's rights as a 50 percent copyright owner. Rather, paragraph II-4 provides a right to additional compensation beyond that guaranteed by the copyright ownership language of paragraph II-12. Finally, the contract provides plaintiff access to the series masters so that it may exploit the program on interactive devices.

On May 16, 2002, the plaintiff and Rysher Entertainment, LLC, entered into a tolling agreement. The agreement states the tolling period began on May 15, 2002. Neither party had rescinded the tolling agreement.

Based on the foregoing, the first cause of action alleges Rysher Entertainment, LLC, breached the contract by failing to document plaintiff's copyright interest so as to ensure its enforceability; pay plaintiff 50 percent of

all profits from the series; and provide access to the series masters so plaintiff could exploit them through interactive devices. The second cause of action for conversion alleges defendants have converted the masters and the revenue from the series. The third cause of action alleges defendants have been unjustly enriched because they have retained 50 percent of the series profits. The fourth cause of action seeks an accounting so plaintiff can receive 50 percent of the series profits utilizing generally accepted accounting principles. The final cause of action alleges defendants interfered with plaintiff's prospective economic advantage by denying it access to the series masters. The prayer for relief seeks compensatory damages; injunctive relief; attorney fees; punitive damages; and interest. Defendants' first amended answers allege plaintiff's claims were barred by various statutes of limitations. We will discuss the pertinent facts when discussing the parties' relevant contentions.

### III. DISCUSSION

#### A. Appeal

#### 1. Statute of limitations

##### a. Overview

■ Defendants argue that plaintiff's complaint was untimely filed. The complaint was filed on February 17, 2009. Defendants' first amended answers allege plaintiff's claims are barred by the section 337, subdivision 1 four-year statute of limitations for written contracts.

Both plaintiff and defendants agree the contract-based claims in the first amended complaint vested on March 17, 1998. On that date, an accountant employed by Rysher Entertainment, LLC, provided Marc Granier, an employee of plaintiff, with a "participation/distribution statement" for the period ending December 31, 1997. This statement detailed the income for the series. The accountant held the title of "Director Participations and Residuals" of Rysher Entertainment, LLC.

On May 16, 2002, Samuel R. Pryor, an attorney representing plaintiff, sent a letter to Frank Stewart, who represented Rysher Entertainment, LLC. Mr. Pryor's May 16, 2002 letter confirmed an agreement to toll the statute of limitations for potential claims against Rysher Entertainment, LLC. Mr. Pryor's letter states in part: "This letter will confirm our conversation on Wednesday, May 15th, in which you courteously agreed that Don Johnson's time in which to bring any action relating to the series 'Nash Bridges' against Rysher Entertainment will be tolled from, at least, our conversation on Tuesday, May

14th until and unless you give us reasonable notice (30 days) rescinding this tolling agreement (the 'tolling period'). [¶] You also mentioned that you would 'work with me' if I requested a reasonable earlier date. I am informed there was a statement dated March 17, 1998. Accordingly, I would appreciate your agreeing that the tolling period begins on March 16, 2002. [¶] Under this agreement, all statutorily prescribed periods of limitations (and the doctrine of laches to the extent based upon the time period being tolled pursuant to this agreement) will be tolled during the tolling period. The conduct of any party in entering into this agreement will not be used against any party for any purpose in any subsequent litigation except with respect to the tolling of the period of limitations and the doctrine of laches." The May 16, 2002 letter was executed by Mr. Stewart on behalf of Rysher Entertainment, LLC. As noted, the complaint was filed on February 17, 2009.

Defendants present two statute of limitations contentions. First, defendants argue that suit was filed after the tolling agreement expired by operation of law. Defendants assert section 360.5 requires that a tolling agreement be renewed in writing every four years. Since the tolling agreement was executed by Mr. Pryor more than four years before suit was filed, defendants argue plaintiff's claims are barred by section 337, subdivision 1.[2] Section 337, subdivision 1 is the statute of limitations for written contracts. We will discuss in the published portion of this opinion the first issue as to whether section 360.5 applies to a tolling agreement. Second, defendants argue that the tolling agreement does not apply to plaintiff as it refers only to the actor, Mr. Johnson. This second statute of limitations issue will be discussed in the unpublished portion of this opinion.

### b. The circumstances leading to the adoption of section 360.5 in 1951 and its amendment in 1953

Defendants argue section 360.5 requires that an indefinite tolling agreement be renewed every four years. We begin with an analysis of section 360.5 and the circumstances which gave rise to its enactment in 1951 and its amendment in 1953. Defendants rely on section 360.5 which states: "No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated. *No waiver executed prior to the expiration of the time limited for the commencement of the action by this title shall be effective for*

---

[2] Section 337, subdivision 1 states in part: "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing . . . ."

*a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title and no waiver executed after the expiration of such time shall be effective for a period exceeding four years from the date thereof,* but any such waiver may be renewed for a further period of not exceeding four years from the expiration of the immediately preceding waiver. Such waivers may be made successively. The provisions of this section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid or the repayment of moneys fraudulently or illegally obtained from the county." (Italics added.) It is the italicized language referring to the four-year renewal requirement that is at issue.

Section 360.5 was originally enacted in 1951. (Stats. 1951, ch. 1106, § 1, p. 2863.)[3] The Legislative Counsel's June 12, 1951 report on section 360.5 states: "Invalidates any form of waiver of statutes of limitations unless in writing signed by the person obligated. Provides such waiver is effective for not more than 4 years from expiration of time limited. Authorizes successive renewals of such waivers." (Legis. Counsel, Rep. on Assem. Bill No. 370 (1951 Reg. Sess.) p. 1.) The June 12, 1951 report of the Attorney General reiterated the position of the Legislative Counsel but added, "We believe that this bill is subject to no substantial legal objections." (Deputy Attorney General Marcus Vanderlaan, Rep. on Assem. Bill No. 370 (1951 Reg. Sess.) p. 1.) Governor Earl Warren's legislative secretary, Beach Vasey, stated in a June 15, 1951 memorandum: "I recommend approval. The general purpose of statutes of limitations is to prevent the enforcing of stale claims. The purpose would appear furthered by this legislation. There appears to be no objection." (Legis. Sect. Beach Vasey, legis. mem. to Governor Earl Warren regarding Assem. Bill No. 370 (1951 Reg. Sess.) p. 1.)

Section 360.5 was amended in 1953 to state as it does now. (Stats. 1953, ch. 655, § 1, p. 1906.) In *Carlton Browne & Co. v. Superior Court* (1989) 210 Cal.App.3d 35, 42–43 [258 Cal.Rptr. 118], our colleagues in Division Four of this appellate district digested the report of the Senate Interim Judiciary Committee concerning the 1953 amendment. We recite our Division Four

---

[3] When adopted in 1951, section 360.5 stated: "No acknowledgment, promise or any form of waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the acknowledgment, promise or any form of waiver is in writing and signed by the person obligated. No such acknowledgment, promise or any form of waiver executed prior or subsequent to the expiration of the time limited for the commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title, but such waiver may be renewed for a further period of not exceeding four years upon the expiration of the immediately preceding waiver. Such waivers may be made successively." (Stats. 1951, ch. 1106, § 1, p. 2863.)

colleagues' summary of that interim committee report prepared in connection with Senate Bill No. 671 (1953 Reg. Sess.) in detail: " 'In 1947 Section 360 of the Code of Civil Procedure was amended so as to provide that the statute of limitations on a promissory note should not commence to run until the last payment of principal or interest made by the party to be charged prior to the time when the statute of limitations would otherwise have run. The purpose of this amendment was to make unnecessary the successive renewal of promissory notes and recording of mortgages or deeds of trust every four years in those cases in which the borrower continued to regularly make payments on account of principal or interest. The rule theretofore was that a payment on account of interest or principal would toll the statute only if in addition to the mere fact of payment there existed some acknowledgment of the debt or promise to pay it. This amendment has made it possible for lenders to carry borrowers without either commencing suit or compelling a renewal of the obligation so long as the borrower kept up his payments. [¶] In 1951 Section 360.5 was added to the code, designed to prevent the exaction for purchasers or borrowers of an unlimited and indefinite waiver of the statute of limitations at the time credit was extended or a loan made. This amendment was intended not only to require that waivers of the statute be in writing but that no one waiver could waive the statute for a period of more than four years beyond the time when the statute would otherwise have run.' " (*Carlton Browne & Co. v. Superior Court, supra,* 210 Cal.App.3d at pp. 42–43.)

In 1951, the drafters of section 360.5 had included some language from section 360. (*Carlton Browne & Co. v. Superior Court, supra,* 210 Cal.App.3d at pp. 42–43.) Section 360, as it was viewed in 1951 and 1953, allowed for tolling of the statute of limitations in the case of written acknowledgment of or a promise to pay a debt. (*Western Coal & Mining Co. v. Jones* (1946) 27 Cal.2d 819, 822 [167 P.2d 719] ["The statutory rule in respect to the tolling of the statute by a subsequent writing" is § 360]; *Bank of America etc. Assn. v. Hunter* (1937) 8 Cal.2d 592, 594–595 [67 P.2d 99] [debt acknowledgments were sufficient to toll statute of limitations pursuant to § 360].) As originally adopted in 1951, section 360.5 created some confusion concerning the meaning of section 360. (*Carlton Browne & Co. v. Superior Court, supra,* 210 Cal.App.3d at pp. 42–43; *California Code of Civil Procedure Section 360.5* (1951–1952) 4 Stan. L.Rev. 415, 417–418.) The Senate Interim Judiciary Committee identified the effect of Senate Bill No. 671 (1953 Reg. Sess.) on that uncertainty: " 'The confusion can easily be clarified by limiting Section 360.5 to the subject of waivers.' " (*Carlton Browne & Co. v. Superior Court, supra,* 210 Cal.App.3d at p. 43.)

The Legislative Counsel's May 1, 1953 report states: "Changes subject matter of the section from 'acknowledgment, promise, or any form of waiver' to simply 'waiver.' [¶] Changes limitation on effectiveness of waiver of

statute of limitations executed after the statutory period has run from four years from the dates of termination of the period to four years from the date of the waiver. [¶] Permits renewal for the same period from, rather than upon, the expiration of the immediately preceding waiver. [¶] Provides that the section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid or the repayment of moneys fraudulently or illegally obtained from the county." (Legis. Counsel, Rep. on Sen. Bill No. 681 (1953 Reg. Sess.) p. 1.)

The May 4, 1953 report of the Attorney General states: "Amends Section 360.5 of the Code of Civil Procedure by eliminating acknowledgments of an existing debt and promises to pay an existing debt from the effect of this section. As amended, the section is confined to waivers of the statute of limitations. [¶] Amends Section 360.5 so as to provide that a waiver of the statute of limitations made after the expiration of the time to sue may be effective for a period of four years from the date of the waiver, under the existing section such a waiver would be effective only for a [four-year] period commencing upon the date that the statute of limitations would expire on the original obligation. [¶] Amends Section 360.5 so as to exempt from the provisions thereof written waivers, acknowledgements and promises made by a person obligated to repay moneys fraudulently or [illegally] obtained from a county or to secure repayment of the indigent aid. [¶] Comment: There appears to have been some conflict between the existing Section 360.5 and Section 360 of the [Code of Civil Procedure] insofar as promissory notes were concerned. Under Section 360 payment of the interest or principal due on a promissory note would constitute a promise or acknowledgment (*Steiner v. Croonquist* [(1951)] 108 Cal.App.2d [Supp.] 895 [238 P.2d 690]), while under Section 360.5 such a payment would be ineffective unless accompanied by a written promise." (Deputy Atty. Gen. William J. Power, letter to Governor Earl Warren on Sen. Bill No. 681 (1953 Reg. Sess.) p. 1.)

On April 30, 1953, Edward D. Landels, counsel for the California Bankers Association, which originally sponsored Senate Bill No. 681 (1953 Reg. Sess.), wrote Governor Warren: "Section 360.5 was added to the Code of Civil Procedure in 1951 so as to invalidate indefinite and perpetual waivers of the Statute of Limitations. To that no one took exception. The Section was so drafted, however, as to possibly repeal the provisions of Section 360 which provides that payment of principal or interest on a promissory note should be deemed to toll the Statute if made before the Statute had run. This was unintended and Senate Bill [No.] 681 will make it clear that Section 360.5 applies only to waivers and does not affect the provisions of the preceding section dealing with what constitutes a sufficient acknowledgment to toll the

Statute of Limitations." (Counsel Edward D. Landels, Cal. Bankers Assn., letter to Governor Earl Warren on Sen. Bill No. 681 (1953 Reg. Sess.) p. 1.)

Finally, the May 11, 1953 report of Governor Warren's legislative secretary, Mr. Vasey, stated: "Amends Section 360.5, Code of Civil Procedure, relating to waiver of statute of limitations. [¶] Eliminates acknowledgments of, and promises to pay an existing debt from the coverage of the section, confining it to waivers of the statute of limitations. [¶] Provides that a waiver of the statute of limitations made after the statutory period has run, may be made effective for a period of four years from the date of the waiver, rather than four years from the date that the statutory period would expire on the original obligation. [¶] Provides that the limitation of the section upon the period of effectiveness of any waiver or statute of limitation, shall not be applicable to any acknowledgment, promise or waiver which is in writing and signed by the person obligated and given in any county to secure repayment of indigent aid or the repayment of monies fraudulently or illegally obtained from the county. [¶] . . . This section was added in 1951 to validate indefinite and perpetual waivers of the statute of limitations. To that no one took exception. As drafted, however, it would possibly repeal Section 360 providing the payment of principal or interest on a promissory note should be deemed to toll a statute if made before the statute of limitations had run. This was unintended. This amendment will make it clear that Section 360.5 applies only to waivers and does not affect the provisions of Section 360 dealing with what constitutes a sufficient acknowledgment to toll the statute of limitations." (Legis. Sect. Beach Vasey, legis. mem. to Governor Earl Warren regarding Sen. Bill No. 681 (1953 Reg. Sess.) pp. 1–2.)

### c. Section 360.5 does not apply to the tolling agreement in this case

Defendant's contention section 360.5, with its four-year renewal requirement, is the controlling statute of limitations provision is without merit. Section 360.5 involves the *waiver* of the statute of limitations. The present case does not involve *waiver* of the right to assert the statute of limitations. Rather, the parties entered into a tolling agreement. Tolling agreements are a comparatively recent development in law. Prior to 1977, only one federal or state opinion contains both the phrases "statute of limitation" and "tolling agreement." (*U.S. v. Harris Trust and Savings Bank* (7th Cir. 1968) 390 F.2d 285, 288.) A tolling agreement, executed as the one here to permit efforts to be made to settle the matter without litigation, furthers the highly favored public policy of settling disputes. (See *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 277 [10 Cal.Rptr.2d 859, 834 P.2d 119]; *Salmon Protection & Watershed Network v. County of Marin* (2012) 205

Cal.App.4th 195, 201 [140 Cal.Rptr.3d 290] [tolling agreement in a Cal. Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) dispute].)

■ Under California law, tolling generally refers to a suspension of a statute of limitations. (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 674 [108 Cal.Rptr.3d 171, 229 P.3d 83], quoting *Woods v. Young* (1991) 53 Cal.3d 315, 326, fn. 3 [279 Cal.Rptr. 613, 807 P.2d 455] [" 'Tolling may be analogized to a clock that is stopped and then restarted. Whatever period of time that remained when the clock is stopped is available when the clock is restarted, that is, when the tolling period has ended.' "]; *Cuadra v. Millan* (1998) 17 Cal.4th 855 [72 Cal.Rptr.2d 687, 952 P.2d 704], overruled on a different point in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701], quoting 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 407, p. 513 [" 'The statute [of limitations] may be tolled (i.e., *its operation suspended*) by various circumstances, events or acts.' "].) Federal decisional authority is in accord. (*Chardon v. Fumero Soto* (1983) 462 U.S. 650, 652, fn. 1 [77 L.Ed.2d 74, 103 S.Ct. 2611]; *Board of Regents v. Tomanio* (1980) 446 U.S. 478, 486 [64 L.Ed.2d 440, 100 S.Ct. 1790].) Various California statutory provisions permit the statute of limitations to be tolled, i.e., suspended for a specified period. (E.g., §§ 352, subd. (a) [minors, insanity], 352.1 [imprisonment], 366.1 [plaintiff's death], 366.2, subd. (a) [defendant's death].) Decisions from other jurisdictions state that a tolling agreement suspends or interrupts the operation of the statute of limitations. (*Camico Mutual Insurance Company v. Citizens Bank* (7th Cir. 2007) 474 F.3d 989, 993 [both parties agreed tolling meant suspension]; *Hunter-Boykin v. George Washington University* (D.C.Cir. 1998) 328 U.S. App.D.C. 22 [132 F.3d 77, 83–84] [relying on legal dictionary definitions—tolling means suspension or interruption of the statute of limitations]; *Clark v. Milam* (S.D.W.Va. 1994) 847 F.Supp. 409, 421 [describing tolling agreement as suspending the running operation of the statute of limitations].)

■ Our duty is to implement the Legislature's intent. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125 [77 Cal.Rptr.3d 569, 184 P.3d 702]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We turn now to section 360.5.
■ Section 360.5 applies to *waivers* of the statute of limitations. One could intelligently argue that waiver includes a tolling agreement. After all, the defendant waives the right to assert the tolling period counts as part of the time during which the statute of limitations is running. On the other hand, tolling involves the suspension of the statute of limitations. It is plausible that a defendant has not waived the right to assert the statute of limitations when a tolling agreement is entered into by potential litigants. The defendant can litigate the statute of limitations issue but is barred from including the tolling period in the time to bring suit. Thus, there is some ambiguity as to the reach

of section 360.5 and we may examine extrinsic aids to determine its application to the case before us which includes legislative history; the Legislature's purposes; the context in which language is used; the entire statutory scheme; and the evils to be remedied. (*Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 446 [129 Cal.Rptr.3d 133, 257 P.3d 738]; *People v. Gonzalez, supra,* 43 Cal.4th at p. 1126.)

The most important indicators of legislative intent are the words appearing in section 360.5. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529–530 [120 Cal.Rptr.3d 531, 246 P.3d 612]; *People v. Watson* (2007) 42 Cal.4th 822, 828 [68 Cal.Rptr.3d 769, 171 P.3d 1101].) Section 360.5, as adopted in 1951, and amended in 1953, makes no reference to tolling agreements. Further, relevant legislative and executive branch documents promulgated in 1951 and 1953, as the Legislature was contemplating the pending bills, make no reference to tolling agreements. And this absence of discussion of tolling agreements in official memoranda in 1951 and 1953 makes sense—they are a recent development in litigation practice. Also, section 360.5 was not designed to address issues concerning tolling agree-ments. As explained in the 1953 interim judicial committee report, " 'In 1951 Section 360.5 was added to the code, designed to prevent the exaction for purchasers or borrowers of an unlimited and indefinite waiver of the statute of limitations at the time credit was extended or a loan made.' " (*Carlton Browne & Co. v. Superior Court, supra,* 210 Cal.App.3d at pp. 42–43.) And in 1953, the interim judicial committee report explicitly indicated that year's legislation was limited to waivers. (*Id.* at p. 43.) To sum up, there is no evidence the Legislature intended section 360.5 to apply to tolling agree-ments. (See *Salmon Protection & Watershed Network v. County of Marin, supra,* 205 Cal.App.4th at pp. 203, 208 [recognizing the difference between a waiver pursuant to § 360.5 and a tolling agreement which "extend[s] the statutory period for filing suit"].) The pertinent legislative intent materials demonstrate the Legislature never intended that section 360.5 apply to tolling agreements.

■ The section 360.5 four-year renewal requirement has no application to the May 16, 2002 tolling agreement. There was no requirement the May 16, 2002 tolling agreement be renewed after four years. The May 16, 2002 tolling agreement therefore tolled the section 337, subdivision 1 statute of limita-tions. The February 17, 2009 filing of the complaint was timely.

> d. Substantial evidence supports the finding the May 16, 2002 tolling agreement applies to plaintiff*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 919.

2.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.   Cross-appeal*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.  DISPOSITION

The judgment is affirmed insofar as it awards $15 million plus interest from July 12, 2010. The cost award is affirmed. The judgment is reversed in all other respects. The cross-appeal is dismissed. Plaintiff, Don Johnson Productions, Inc., is awarded costs on appeal from defendants, Rysher Entertainment, LLC, 2929 Entertainment, LP, and Qualia Capital, LLC.

Ferns, J.,[†] concurred.

**MOSK, J.,** Dissenting.—I respectfully dissent.

### A.   *Tolling Agreement*

Defendant asserts that the Code of Civil Procedure section 360.5[1] renewal requirement applies to the "tolling agreement" between the parties, and therefore plaintiff's claim is untimely and barred by the statute of limitations. (§ 337.) The apparent purpose of section 360.5 was to prevent creditors from extracting perpetual waivers of the statute of limitations and thereby emasculating the defense of the statute of limitations. (See *California First Bank v. Braden* (1989) 216 Cal.App.3d 672, 677 [264 Cal.Rptr. 820].) Moreover, such agreements would be contrary to the public interest in preventing stale claims. (See *Addison v. State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941].) The same policy principles apply to agreements whether labeled as waivers of, or as tolling of, the statute of limitations.

A comment in the Stanford Law Review shortly after the enactment of section 360.5, stated as follows: "More likely 'waiver' was included in the first part of [section 360.5] as a generic term to prevent evasion of the

---

* See footnote, *ante,* page 919.

[†] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

section. It would then include acknowledgements, promises, and all other things similarly barring a defense of the statute of limitations. [¶] . . . California courts have used the term 'waiver' when referring to promises or acknowledgments that *toll* the statute of limitations. 'Waiver' has been given many different meanings. But for the purposes of the statute of limitations in California, it should be construed as including acknowledgments and promises." (Comment, *California Code of Civil Procedure section 360.5* (1952) 4 Stan. L.Rev. 415, 416, italics added.) The comment goes on to state, "The section seems to envision *tolling* the statute only by a series of separate transactions. . . . Section 360.5 was to provide a maximum beyond which the statute could not be *tolled* by any means." (*Id.* at pp. 426–427, italics added.)

Another article stated, "In California, waiver [of the statute of limitations] is controlled by section 360.5 of the Code of Civil Procedure. For *tolling agreements* signed before the expiration of the limitations period, the California Code allows a four-year waiver running from the date of expiration. For agreements signed after the limitations period, the statute may be *tolled* for four years from the date of signing. California's four-year limit appears to be aimed at avoiding 'perpetual contracts.' " (Note, *Reviving Contract Claims Barred by the Statute of Limitations: An Examination of the Legal and Ethical Foundation for Revival* (2000) 75 Notre Dame L.Rev. 1571, 1586, italics added & omitted.)[2] A prominent authority, citing section 360.5, said, "By law, a *tolling agreement* is not effective for a period exceeding four years from the expiration of the time otherwise required for commencement of the action, although the parties may execute successive *tolling agreements* each of which is effective for up to another four years." (1 Schwing, Cal. Affirmative Defenses (2012) § 25:67, p. 1770, italics added); see Moskowitz, Environmental Liability and Real Property Transactions (2012) Appendix A: Annotated Forms, Form A-21 [referring to § 360.5 in connection with a tolling agreement].) Thus, it appears that legal writers have used "waiver" and "tolling" interchangeably in connection with section 360.5.

Judicial opinions have likewise used the terms interchangeably in connection with the statute of limitations. (See, e.g., *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 835 [30 Cal.Rptr.3d 588] [describing § 360.5 as concerning "California's . . . four-year tolling limit"]; *Abramson v. Brownstein* (9th Cir. 1990) 897 F.2d 389, 393 [tolling and waiver used

---

[2] The Legislative Counsel reported on the proposed section 360.5 as follows: "Invalidates *any form of waiver* of statutes of limitation unless in writing signed by the person obligated. Provides such waiver is effective for not more than 4 years from expiration of time limit. Authorizes successive renewals of such waivers." (Legis. Counsel, Rep. on Assem. Bill No. 370 (1951 Reg. Sess.) June 12, 1951, italics added.)

interchangeably]; *U.S. v. Stewert* (E.D.Va. 2006) 425 F.Supp.2d 727, 737 ["defendant knowingly and voluntarily executed a waiver of indictment for the purposes of tolling the statute of limitations . . ."]; *Hexcel Corporation v. Ineos Polymers, Inc.* (9th Cir. 2012) 681 F.3d 1055, 1060 [party argues tolling agreement lapsed under § 360.5].) In *Hunter-Boykin v. George Washington University* (D.C.Cir. 1998) 328 U.S. App.D.C. 22 [132 F.3d 77, 80], the court said, "The defendant purports to see an important distinction between a 'suspension' [(tolling)] and a 'waiver' of a statute of limitations. We do not, at least as the parties use the words in this case."

Prominent legal authorities have noted the imprecise meaning of the word "waiver." Williston has said "waiver" has "different meanings." (5 Williston on Contracts (3d ed. 1961) § 679, p. 246.) He notes that a promise "to excuse performance of an obligation not due at the time when a promise is made . . . might perhaps also be called 'waiver' . . . ." (*Id.*, § 679, pp. 246–253.) Williston added, "In view of these different meanings of the word 'waiver' it is obviously futile to attempt to define the requirements of a valid waiver unless its use is first confined to some one or more of its ordinary applications wherein the requirements of the law are identical. Until that is done there will be constant confusion of expression. [¶] Thus, one court will say 'No question of estoppel as distinguished from waiver arises'; another will say 'The basis of waiver is estoppel' . . . . [¶] An understanding of the law requires, however, that each of these legal transactions be looked at separately and its requirements determined." (*Id.* at pp. 257–258, fns. omitted; see 13 Williston on Contracts (4th ed. 2000) § 39:14, pp. 560–564.)

Corbin on Contracts (rev. ed. 1999) section 40.1, page 514 states, "The term 'waiver' has been given various definitions and is used under many varying circumstances. Lawyers might like greater definition but judges are not precise, perhaps deliberately leaving flexibility in the concept and use of waiver. There is no one 'correct' definition. Waiver cannot be defined without reference to the kind of circumstances to which it is being related. Nor can we determine the legal operation of a 'waiver' without knowing the facts that the term is being used to describe." Garner has said, "*Waiver* is 'an imprecise and generic term.'" (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 923 (Garner).) Thus, defendant argues that "waiver" can be used in different contexts and is consistent with the use of tolling in this situation.

On the other hand, tolling generally has been viewed as technically different from waiver—the position of plaintiff in arguing that the tolling agreement is not subject to section 360.5. A tolling agreement "extend[s] the

statutory limitations period on the plaintiff's claim." (Black's Law Dict. (9th ed. 2004) p. 1625 (Black's).) Tolling "means 'to abate' or 'to stop the running of (the statutory period).' " (Garner, *supra*, at p. 884.) When the statute of limitations is tolled, it is "suspended." (Mellinkoff's Dict. of American Usage (1992) p. 616.) Commonly, a statute of limitations is tolled when a plaintiff is a minor or has disabilities or when a defendant is absent from the jurisdiction or in other comparable situations. (See *ibid.*; Black's, *supra*, at p. 1625; §§ 340.4–340.6, 352, 354.) But there can be a "tolling agreement," which has been defined as one in which the potential defendant "agrees to extend the statutory limitations period on the plaintiff's claim." (Black's, *supra*, at p. 1625.) The Legislature has used the words "toll" or "tolled" (see, e.g., §§ 340.5, 340.6, subd. (a)(3), 340.7) and thus knows how to use that word when applicable. In section 360.5, the Legislature used the word "waiver" and not "toll." "Waiver is the intentional relinquishment of a known right after knowledge of the facts" (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 572 [150 P.2d 422]), and extends the time to sue (Rylaarsdam & Turner, Cal. Practice Guide: Civil Procedure Before Trial, Statute of Limitations (The Rutter Group 2012) ¶ 1:101, p. 1-18) rather than suspending the applicable statute of limitations (see *Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, 757 [41 Cal.Rptr.3d 819] [distinguishing waiver, tolling and estoppel]; *State v. Blackburn* (2008) 118 Ohio St.3d 163 [2008 Ohio 1823, 887 N.E.2d 319, 323] ["Unlike waiver, statutory tolling does not necessarily require an informed, tactical decision."]). Absent legislative intent to the contrary, or other evidence of a different meaning, legal terms in a statute are presumed to have been used in their legal sense. (2A, Singer & Singer, Sutherland Statutes and Statutory Construction (7th ed. 2007) § 47:30, pp. 478–479.) The words used both in the statute and the agreement generally are supposed to govern unless there is some ambiguity or unless contrary to the intent of the statute or agreement. (See Civ. Code, § 1638; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082–1084 [36 Cal.Rptr.3d 650] (*MacIsaac*); Scalia & Garner (2012) Reading Law: The Interpretation of Legal Texts [textualism].) "Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." (Civ. Code, § 1645.)

In order to resolve these conflicting views, because of the imprecise meaning of "waiver" in section 360.5, the task here is to ascertain if the "tolling agreement" appropriately fits within the logical meaning of waiver in

that statute. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.) Similarly, if there is any ambiguity in the statute, we should interpret and apply it in a reasonable manner to effectuate its purpose. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873], superseded by statute on another ground ["When uncertainty arises in a question of statutory interpretation, consideration must be given to the consequences that will flow from a particular interpretation. [Citation.] In this regard, it is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences. [Citations.] ' "[W]here the language of a statutory provision is [susceptible] of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." ' [Citation.]"].)

Allowing parties to circumvent easily the policy behind section 360.5 by using the word "toll" instead of "waive" would be an absurd consequence and would contravene public policy. The tolling agreement should be interpreted in a reasonable fashion. (See *Pacific Tel. & Tel. Co. v. City of Lodi* (1943) 58 Cal.App.2d 888, 892 [137 P.2d 847] ["literal interpretation . . . tends to make . . . paragraph inoperative and to involve an absurdity. Such interpretation is to be avoided if said paragraph can be given an interpretation which will make it operative and reasonable . . ."]; Rest.2d Contracts, § 203(a), p. 92.) Also reading the section 360.5 "waiver" literally to exclude tolling does not "comport[] with its purpose" (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321]; *MacIsaac, supra*, 134 Cal.App.4th at p. 1083) and would frustrate the purpose of the statute (*California School Employees Assn. v. Governing Board, supra*, at p. 341). Section 360.5 should be interpreted to cover the tolling agreement in this case. Such an interpretation would be consistent with "reason, practicality, and common sense." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 [8 Cal.Rptr.2d 298].) Moreover, in effect, by agreeing to toll the statute of limitations, plaintiff waived rights under the statute of limitations.

Perhaps legal authorities incorrectly use "tolling" and "waiver" interchangeably. The use of the word "toll" in its strict legal meaning, however, does not make sense here. Tolling is normally tied to some specific phenomenon and is not used to involve an indefinite period or a period in the discretion of one party. Generally, tolling is provided for by statute or is an equitable doctrine

created judicially. (See Rylaarsdam & Turner, Cal. Practice Guide: Civil Procedure Before Trial, Statute of Limitations, *supra*, ¶ 6:1, p. 6-1; *IPF Recovery Co. v. Illinois Ins. Guaranty Fund* (2005) 356 Ill.App.3d 658 [292 Ill.Dec. 507, 826 N.E.2d 943, 947–948].) It would appear that here the intent of the parties was not to use "toll" in the strict legal sense, but instead to have plaintiff waive the statute of limitations until notice was given. If, as the legislative history suggests, section 360.5 was to apply to any type of waiver, what was designated as tolling here should be viewed as a type of waiver covered by the statute. There is no meaningful difference here between suspending the statute of limitations and waiving it in this context.

The tolling agreement provided for tolling until "you give us reasonable notice (30 days) rescinding this tolling agreement." If the words of the tolling agreement are to be applied literally, "rescinding" the tolling agreement would render it a nullity (*Holmes v. Steele* (1969) 269 Cal.App.2d 675, 677 [75 Cal.Rptr. 216]) and the statute of limitations would likely have run. There is no reason to apply the term "tolling" literally and not "rescinding." The purpose of the agreement was to waive the statute of limitations as provided in section 360.5.

Section 360 has no applicability here because that provision deals with acknowledgments of debt and promises of payment. Plaintiff made no such acknowledgment or payment.

It is true that the "statute of limitations should not be characterized by courts as either 'favored' or 'disfavored.' The two public policies . . . the one for repose and the other for disposition on the merits—are equally strong, the one being no less important or substantial than the other." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79].) But section 360.5 evinces a public policy of precluding agreed-upon, indefinite periods of limitations.

Accordingly, I would reverse the judgment by holding that the plaintiff's claims are barred by the statute of limitations.

B. *Other Issue**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 919.

## C.  *Conclusion*

I would reverse the judgment.

A petition for rehearing was denied October 29, 2012, and on October 9, 2012, the opinion was modified to read as printed above. Mosk, J., was of the opinion that the petition should be granted. The petitions of appellant Rysher Entertainment, LLC, and appellant Don Johnson Productions, Inc., for review by the Supreme Court were denied January 16, 2013, S206553.